RAYMOND PETERSON, Plaintiff-Appellant, v. HERBERT S. LOSEFF *et al.*, Defendants-Appellees.

First District (4th Division)   No. 86—1267

Opinion filed July 16, 1987.—Rehearing denied August 27, 1987.

Loggans & Reiter, of Chicago (David A. Novoselsky and Kathleen M. Krist, of counsel), for appellant.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Michael C. Kominiarek and Russel P. Veldenz, of counsel), for appellee Herbert S. Loseff.

Cassiday, Schade & Gloor, of Chicago (Michael J. Gallagher, John N. Seibel, Jean M. Buckley, and Judith A. Schieber, of counsel), for appellee Lutheran General Hospital.

JUSTICE LINN delivered the opinion of the court:

Plaintiff Raymond Peterson brings this appeal seeking reversal of a trial court's order dismissing his four-count complaint. In his complaint, Peterson alleges that he suffered an injury as a result of negligence on the part of defendants Dr. Herbert S. Loseff and Lutheran General Hospital (defendants). The trial court dismissed Peterson's complaint ruling that, as a matter of law, Peterson's action was barred by the applicable statute of limitations (Ill. Rev. Stat. 1985, ch. 110, par. 13—212). The trial court found that Peterson knew or should have known that his injury was the result of malpractice in June of 1980, and that as a result, his filing of a complaint on December 30, 1983, was untimely.

Peterson now appeals contending that the trial court erred in dismissing his lawsuit.

We reverse and remand.

BACKGROUND

This appeal is before the court following the trial court's ruling that Peterson's complaint fails to properly state a cause of action under Illinois law. Accordingly, we must accept as true all of the well-pled allegations in Peterson's complaint and must draw all reasonable inferences in his favor. *Sweis v. City of Chicago* (1986), 142 Ill. App. 3d 643, 491 N.E.2d 1342.

Peterson's complaint reveals that Dr. Loseff treated Peterson in January of 1980 for a fractured left femur. Peterson contends, *inter alia*, that Loseff negligently cared for the fracture and provided negligent follow-up treatment. Peterson further alleges that he could not have known or should not have known of any possible malpractice by Dr. Loseff until January 1, 1982, when such was brought to Peterson's attention while he was receiving treatment from another physician.

Peterson's action against Lutheran General Hospital is based on negligent treatment that Peterson allegedly received while he was a patient at the hospital during January of 1980. Peterson was a patient at the hospital for treatment related to his fractured left femur. Like his action against Dr. Loseff, Peterson contends that he could not have known, and should not have known, of the malpractice committed by the hospital until Peterson learned of it while he was receiving treatment from another physician on January 1, 1982.

Peterson filed this complaint on December 30, 1983. Following the taking of Peterson's deposition, both defendants moved to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619). The defendants relied on deposition testimony by Peterson which, in the defendants' opinion, establishes as a matter of law that Peterson knew or should have known of his injury at least by June of 1980. Specifically, the defendants point to Peterson's statements that he had undergone several surgeries to correct his foot, that Peterson was aware of discolorization and swelling, and that Peterson knew that his leg was not healing properly. In addition, the fact that Peterson entered another hospital in June of 1980 for further surgery is argued by the defendants to be clear evidence that Peterson should have realized that his leg and foot problems were the result of someone's negligence.

Peterson, on the other hand, asserts in his complaint that the possibility of malpractice did not become evident until he visited a subsequent treating physician on January 1, 1982. Peterson alleges that it was at that time that he first became aware that negligence may have played a role in his foot's failure to heal. That being the case, Peter-

son asserts that he could not have known or should not have known of any possible malpractice until January 1, 1982, and that as a result, his complaint, filed on December 30, 1983, was within the two-year statute of limitations set forth in section 13—212 (Ill. Rev. Stat. 1983, ch. 110, par. 13—212).

After hearing the parties' respective arguments, the trial court dismissed Peterson's complaint. The trial court agreed with the defendants that Peterson should have realized at least by June of 1980 that the complications with his foot were a result of malpractice. That being the case, the trial court ruled that Peterson's filing of his complaint on December 30, 1983, was untimely.

Peterson now brings this appeal.

OPINION

Peterson's attack on appeal is two-fold: (1) the trial court erred in dismissing his complaint for a question of fact remains as to whether he knew or should have known that it was malpractice that caused the complications in the healing of his foot; and (2) the trial court erred in dismissing his complaint pursuant to a section 2—619 motion.

I

■ We first address Peterson's claim that a question of fact exists as to whether he knew or should have known that his injury resulted from malpractice.

The defendants contend that Peterson should have realized the possibility of malpractice after his second operation in June 1980. In addition, the other facts known by Peterson (see discussion *supra*) reveal clearly, according to the defendants, that Peterson should have known that someone had committed malpractice. In making their argument, the defendants rely principally on the case of *Gaudynski v. Corbett* (1980), 81 Ill. App. 3d 910, 401 N.E.2d 1218.

Peterson, on the other hand, responds that, although he knew that his foot was not healing properly, he did not realize that the complications could have resulted from malpractice until such was brought to his attention by a subsequent treating physician. That being the case, Peterson asserts that a question of fact exists as to whether he "knew or should have known" of malpractice within the time required by the statute of limitations. Peterson relies on *Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 395 N.E.2d 964, and *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934.

Medical malpractice actions are governed by section 13—212 (Ill. Rev. Stat. 1983, ch. 110, par. 13—212). This statute provides that a

malpractice action against a physician or hospital must be brought within two years of when the claimant knew or should have known of the existence of the injury but in no event more than four years after the date of the alleged act or omission claimed to be the cause of the injury. *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560.

The Illinois General Assembly enacted section 13—212 to alleviate the problems caused by the "discovery rule." Under that doctrine, a cause of action in medical malpractice did not arise until the patient "learned of the injury or should have learned of it" regardless of how long after the negligent act that discovery may have occurred. (See *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450.) Application of the discovery rule allowed patients to bring claims many years after the negligent act or omission allegedly occurred, resulting in a "long tail" of liability. (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 307, 402 N.E.2d 560.) The plaintiff merely had to bring his cause of action within two years of discovering its existence. However, by placing an absolute cut-off date beyond which a malpractice action could not be brought (four years from the last date of treatment), the General Assembly sought to help calm the storm surrounding the so-called "medical malpractice insurance crisis" by increasing the ability of insurance companies to predict future liabilities. (See Comment, *"Claims Made" Dilemma in Professional Liability Insurance*, 22 U.C.L.A. L. Rev. 925 (1975).) As the supreme court noted in *Anderson*:

> The crisis which confronted the legislatures in the mid-1970's concerned the rapid increase in the premiums for medical malpractice insurance ***. The object of the legislation was to insure the continued availability of this type of insurance to those who were affected by the crisis ***. *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 317, 402 N.E.2d 560.

By enacting section 13—212, therefore, the General Assembly eliminated the "long tail" of liability and severely curtailed the purview of the discovery rule. Predictability of claims has been restored to the malpractice field for insurers are now aware that no claim can be brought more than four years after an allegedly negligent act or omission. Consistent with the purpose of most statutes of limitation, section 13—212 acts to "require the prosecution of a right of action within a reasonable time to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims." *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 132, 334 N.E.2d 160.

However, because section 13—212's two-year limitation is prem-

ised upon an issue which is generally a fact question, namely, whether a plaintiff knew or should have known of his cause of action, we believe justice requires that complaints involving this matter should be liberally construed. In light of the fact that section 13—212 has terminated the practice of bringing malpractice claims many years after the occurrence (as was previously possible under the old discovery rule), we do not believe that section 13—212's two-year limitation should be narrowly or strictly construed. Instead, where there has been no loss or impairment of available evidence and where the question of whether a particular occurrence placed the plaintiff on notice of potential malpractice is close, we conclude that the issue is not one which ought to be decided as a matter of law. Rather, whether the plaintiff should have discovered his cause of action is best left for a jury to decide. Accord *Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 395 N.E.2d 964.

In the case at bar, Peterson's complaint alleges that he could not have known or should not have known of any possible malpractice until January 1, 1982. The complaint states that he became aware of the malpractice possibility while he was being attended to by a subsequent treating physician on January 1, 1982. Peterson then filed his complaint on December 30, 1983, within two years of the alleged January 1 discovery date.

■ After reviewing the record, we are compelled to find that Peterson's complaint should not have been dismissed. There is no dispute that Peterson filed his complaint within the four-year limitation set forth in section 13—212. Nor is there any contention that Peterson's apparent delay has resulted in evidence being no longer available. Rather, the dispute centers around whether Peterson was apprised of sufficient facts such that he was put on notice that his injury resulted from the defendants' malpractice. Specifically, the parties differ on whether Peterson's foot complications and its failure to heal properly are to be understood, as a matter of law, to be the type of problem which reasonable men would necessarily conclude resulted from malpractice. We believe that under the circumstances presented here, Peterson's failure to link his condition with the defendants' alleged malpractice within section 13—212's two-year limitation should not bar his action at the pleading stage. In this type of case, a jury should decide whether Peterson knew or should have known of the injury and its link to the defendants' alleged malpractice.

This case is clearly distinguishable from *Gaudynski v. Corbett* (1980), 81 Ill. App. 3d 910, 401 N.E.2d 1218. In *Gaudynski*, the plaintiff underwent hip surgery. Subsequently, the plaintiff was told that he

suffered from osteomyelitis. The plaintiff did not suffer that condition before his surgery and it was not the result of the normal healing process. Perhaps more importantly, the plaintiff learned of the condition causing his injury (osteomyelitis) more than five years before he filed his lawsuit. Consequently, the plaintiff's action was barred by the four-year limitation set forth in section 13—212.

Here, however, the problems suffered by Peterson were directly related to the surgery he had undergone and could reasonably have been believed to be the result of poor healing process rather than malpractice. In addition, Peterson's action was filed within the four-year limitation set forth in section 13—212. With that being the case, we rule that the issue of when Peterson should have learned of the defendants' malpractice is for the jury to decide.

In light of the foregoing, we need not address Peterson's second contention, namely, that a section 2—619 motion is the improper method of raising a statute of limitations defense.

CONCLUSION

Accordingly, for the reasons set forth above, the trial court's decision dismissing Peterson's complaint is reversed and this matter is remanded for further proceedings.

Reversed and remanded.

McMORROW, P.J., and JIGANTI, J., concur.