NANCY MOORE *et al.*, Plaintiffs-Appellants, v. A. H. ROBINS COMPANY, INC., Defendant (Robert Richman, Defendant-Appellee).

First District (2nd Division)   No. 87—786

Opinion filed February 23, 1988.

Walter M. Ketchum, Ltd., of Chicago (Paul E. Peldyak, of counsel), for appellants.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Michael C. Kominiarek and Russell P. Veldenz, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs Nancy and Kenneth Moore appeal from an order granting defendant Dr. Robert Richman's motion to dismiss counts III and IV of plaintiffs' six-count complaint. Count III alleged injury, pain and discomfort to Nancy through insertion by defendant of a Dalkon Shield into plaintiff Nancy's uterus, which caused an infection to develop, without warning her of its dangerous propensities. Count IV claimed Kenneth's loss of consortium.

The Dalkon Shield intrauterine device (IUD) was inserted into Nancy's uterus in 1974. Codefendant, A. H. Robins Co. (Robins), not involved in this appeal, designed and manufactured the device. It was removed by Dr. Richman in 1975.

Nine years later, in November 1984, Nancy claims, she watched a television program explaining the effects of the Dalkon Shield. She then telephoned Dr. Richman's office and was informed by his nurse that the IUD inserted into Nancy's uterus in 1974 was a Dalkon Shield.

The Moores thereafter filed a six-count complaint with a jury demand against Dr. Richman and Robins on May 30, 1985. Counts I, II, V and VI were directed at Robins, asserting claims for product liability, breach of implied warranty and loss of consortium.

Pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619), Dr. Richman moved to dismiss counts III and IV of plaintiffs' complaint on September 4, 1985, citing section 13—212 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—212), which provides that an action for medical malpractice may not be brought more than four years after the date on

which the alleged negligence occurred. Dr. Richman asserted that, since plaintiffs filed their complaint more than 11 years after Nancy's Dalkon Shield was inserted and nearly 10 years after it was removed, their suit was barred by the limitations statute.

Nancy filed affidavits on September 4, 1985, and May 8, 1986, and filed a brief on November 14, 1986, opposing the motion to dismiss. In her September 4, 1985, affidavit, Nancy averred, among other things, "[t]hat sometime late in 1975 Dr. Richman informed me that I had to have the Dalkon Shield IUD, previously inserted in my body, removed." Without explanation for the contradiction, Nancy's affidavit of May 8, 1986, avowed, among other things, "[t]hat at no time was the affiant certain that the I.U.D. was a Dalkon Shield until shortly before this suit was filed [on May 30, 1985]." In his affidavit filed on December 23, 1985, Dr. Richman swore, among other things, "[t]hat Nancy Moore was advised that the IUD inserted on October 2, 1974 was a Dalcon [*sic*] Shield." In her November 14, 1986, trial court brief, Nancy insisted that Dr. Richman never revealed to her that the IUD was a Dalkon Shield and fraudulently concealed the true source of and reason for her pain and discomfort from her; therefore, plaintiffs had five years from the date Nancy discovered the cause of her injury, November 1984, in which to file their claim, citing section 13—215 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—215). Plaintiffs also argued that Dr. Richman was equitably estopped from asserting the statute of limitations.

Following a hearing on February 10, 1987, the circuit court granted the motion to dismiss, noting that the late filing of plaintiffs' claim would bar their cause of action were it not for their allegations of fraudulent concealment, which must be shown by some affirmative acts or representations calculated to and do, in fact, prevent discovery of the cause of action. Here, the court continued, plaintiffs did not present evidence of any affirmative acts or statements sufficient to establish fraudulent concealment by defendant, and defendant's mere silence concerning Nancy's condition was insufficient. Finally, the court held, even if Dr. Richman did conceal the source of Nancy's illness, the pain she allegedly experienced following the insertion of the IUD and the statement of Richman's associate one month after the dilatation and curettage made it "inconceivable *** that a reasonable person would not have realized that she may not have been receiving proper diagnosis and treatment at some point in time and that point in time was reached more than five years before the filing of this action." This appeal followed.

I

Plaintiffs initially contend the circuit court erred in granting Dr. Richman's motion to dismiss because facts presented by the parties were sufficient to raise a jury question as to when Nancy discovered the source and cause of her injury. Admitting that their complaint was filed after the four-year bar of their claim became effective, plaintiffs argue that Dr. Richman's representations and misrepresentations amounted to fraudulent concealment, tolling the statute of limitations until November 1984, when Nancy first suspected that "her condition of ill-being was related to the Dalkon Shield."

Nancy's affidavits and responses to Dr. Richman's motion to dismiss, averred that: the IUD was inserted in June 1974, and soon thereafter she developed pain and an infection; during each visit to Dr. Richman concerning her ailments, she inquired as to the source and reason for the pain and infection, and Dr. Richman responded, "Do not worry about it." Nancy further stated that: "sometime late in 1975," Dr. Richman told her the IUD had to be removed; Nancy repeatedly asked why the removal was necessary and he refused to explain, saying only, "Do not worry about it, when the infection clears up, we can insert an improved IUD"; in either late 1975 or early 1976, Dr. Richman informed Nancy that she was pregnant, and the fetus had died *in utero*, requiring a dilatation and curettage, which was performed in March 1976.

Nancy also stated that approximately one month after the dilatation and curettage, Dr. Richman's associate told her she was not pregnant at the time the procedure was performed. Although she first swore in her 1985 affidavit that "sometime late in 1975 Dr. Richman informed *** [her] that [she] *** had to have the Dalkon Shield" removed, in her argument to the circuit court Nancy claimed that it was not until November 1984 that she learned Dr. Richman had inserted a Dalkon Shield into her uterus, after a call to Richman's office prompted by a television program. Nancy averred she "further learned" that she had parametritis secondary to her IUD in May 1975. Dr. Richman never told her that the parametritis necessitated the dilatation and curettage, or that the IUD was the source of her physical problems. Nancy swore that she "believed" Dr. Richman knew that the Dalkon Shield was dangerous, that it was the source of her pain and infection, and that he intentionally concealed and misrepresented this information to prevent Nancy from bringing her cause of action "within the normal statute of limitations."

In his affidavit, Dr. Richman averred that: the Dalkon Shield was inserted on October 2, 1974; Nancy was advised that the IUD was a

Dalkon Shield; the IUD remained in place until May 21, 1975, when it was removed; Nancy was admitted to Ingalls Memorial Hospital and there underwent a dilatation and curettage on March 22, 1976; her hospital records reflect she had parametritis in May 1975, secondary to an IUD; and Dr. Richman has had no occasion to see, treat or consult with Nancy since July 26, 1976.

Medical records submitted by plaintiffs and dated March 21, 1976, show that Nancy's medical history included parametritis in May 1975, secondary to an IUD which was then removed. Following the March 1976 dilatation and curettage, the post-operative diagnosis hospital records further show that Nancy "was seen with a pregnant uterus the third week of February with 6 weeks sized pregnancy," and lists her condition as a "missed abortion."

■ Section 13—212 bars claims related to medical treatment filed more than two years after plaintiff knew or should have known of plaintiff's alleged injury and absolutely bars claims filed more than four years from the date of the act giving rise to the cause of action. (Ill. Rev. Stat. 1985, ch. 110, par. 13—212.) The statute begins to run when plaintiff knows or reasonably should know of the injury and also knows or reasonably should know that it was "wrongfully caused" (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869 (*Witherell* I), *on remand* (1986), 148 Ill. App. 3d 32, 499 N.E.2d 46, *rev'd* (1987), 118 Ill. 2d 321, 515 N.E.2d 68 (*Witherell* II); *Richardson v. Sun* (1987), 152 Ill. App. 3d 1027, 1030, 505 N.E.2d 374), *i.e.*, when possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976; *Saunders v. Klungboonkrong* (1986), 150 Ill. App. 3d 56, 60, 501 N.E.2d 882.) The burden then falls on plaintiff to investigate further. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d at 416.

■ Section 13—212, however, is subject to section 13—215 of the Code of Civil Procedure (*Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 424, 490 N.E.2d 665; Ill. Rev. Stat. 1985, ch. 110, par. 13—215): if a cause of action is fraudulently concealed from the person entitled to bring suit, the action may be filed within five years after the claimant learns of the action. *Leffler v. Engler, Zoghlin & Mann, Ltd.* (1987), 157 Ill. App. 3d 718, 721, 510 N.E.2d 1018; Ill. Rev. Stat. 1985, ch. 110, par. 13—215.

Plaintiffs assert that Dr. Richman fraudulently concealed plaintiffs' causes of action by his affirmative statements and by his silence. Whether Dr. Richman concealed plaintiffs' causes of action by silence

or affirmative acts, however, is irrelevant where sufficient facts were known to plaintiffs before the limitations period ran which should have alerted them to the alleged negligence. Section 13—215 is inapplicable where, with ordinary diligence, plaintiff might have discovered within the limitations period that the cause of action existed (*Leffler*, 157 Ill. App. 3d at 721), and a reasonable time remains before the applicable statute of limitations expires. *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 322, 402 N.E.2d 560; *Leffler*, 157 Ill. App. 3d at 721; *Brown v. Mason* (1985), 132 Ill. App. 3d 439, 441-42, 477 N.E.2d 61.

■ In the case *sub judice*, the only disputed material fact is whether Dr. Richman informed Nancy prior to November 1984 that the IUD he inserted in 1974 was a Dalkon Shield. Nancy undermines her claim, that Dr. Richman concealed the identity of the IUD from her until she called his office late in 1984, by having sworn in her 1985 affidavit that "sometime late in 1975 Dr. Richman informed me that I had to have the Dalkon Shield *** in my body, removed." Although her 1986 affidavit contradicts this averment by claiming that she was not certain the IUD was a Dalkon Shield until just before suit was filed, an affiant will not be permitted to change sworn allegations or to reconstruct them so as to avoid the consequences thereof in a previously sworn document. *Meier v. Pocius* (1958), 17 Ill. App. 2d 332, 335, 150 N.E.2d 215; *Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.* (1981), 100 Ill. App. 3d 924, 929, 427 N.E.2d 317.

Assuming, *arguendo*, that Nancy did not know about the Dalkon Shield until 1984, it is nevertheless uncontradicted that: Nancy experienced both pain and infection following the insertion of the IUD and that these difficulties continued until the removal of the IUD in May 1975 or "late" 1975; upon removal of the IUD, Dr. Richman's statements indicated that the source of the infection was the IUD; and, approximately one month following the dilatation and curettage in March 1976, Dr. Richman's associate told Nancy that the procedure was not prompted by her pregnancy.[1] The seemingly contradictory statements of Dr. Richman and his associate concerning the reason for the dilatation and curettage, combined with the other uncontradicted facts, were sufficient to put a reasonable person on notice that Dr. Richman's treatment might have been the source of Nancy's phys-

---

[1]Parenthetically, Nancy's medical records demonstrate both that Nancy was pregnant in early 1976 and that she had an infection secondary to her IUD in May 1975. Plaintiffs' contention that Dr. Richman told Nancy she was pregnant in order to conceal the true reason for the dilatation and curettage is meritless.

ical complications. It is clear, under these circumstances, that it became plaintiffs' burden thereafter to exercise ordinary diligence and investigate further whether Dr. Richman's practice met the standard of care. The record discloses no evidence, however, that the Moores sought any medical advice or treatment from 1976 to the date suit was filed.

Significantly, the last of the acts involving Dr. Richman occurred in approximately April 1976, one month after the dilatation and curettage was completed; whether Dr. Richman inserted the IUD in June 1974, as plaintiffs claim, or in October of that year, as Dr. Richman insists, plaintiffs' cause of action was absolutely time barred by either June or October 1978, four years from the date of the insertion of the IUD. Any fraudulent concealment by Dr. Richman, therefore, ended at least 26 months before the statute of limitations expired, clearly a "reasonable time" in which to file a claim.[2] (See *Real v. Kim* (1983), 112 Ill. App. 3d 427, 436, 445 N.E.2d 783.) There were, therefore, no material and genuine disputed questions of fact raised by the parties requiring jury determination.

## II

■ Plaintiffs next contend that the same facts alleged to support their theory of fraudulent concealment also demonstrate that Dr. Richman should be estopped from asserting the limitations period as a defense.

The doctrine of equitable estoppel prevents a defendant from asserting the limitations bar if a plaintiffs' failure to act within the statutory period results from reasonable reliance on defendant's conduct or assertions. (*Witherell*, 118 Ill. 2d at 330; *Real*, 112 Ill. App. 3d at 434.) Where, however, the "lulling" period induced by a defendant ends with ample time remaining before the expiration of the statute of limitations, the doctrine will not apply. (*Chestnut v. Adeli* (1985), 131 Ill. App. 3d 24, 30, 475 N.E.2d 260; *Real*, 112 Ill. App. 3d at 435.) A plaintiff bears the burden of investigating whether he or she has a viable claim. (*Real*, 112 Ill. App. 3d at 435-36.) Nothing in the

---

[2]Dr. Richman also notes that plaintiffs' cause of action arose prior to the effective date of section 13—212, September 19, 1976. In *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 422, 490 N.E.2d 665, the court held that a plaintiff whose cause of action accrued before September 19, 1976, was permitted four years from September 19, 1976, in which to file his claim. Thus, Dr. Richman argues, the latest possible date plaintiffs might have submitted their complaint to the court was September 19, 1980. Even with this extended limitation period, however, plaintiffs still failed to file a timely complaint.

record demonstrates such an investigation here.

The discomfort experienced by Nancy following insertion of the IUD, Dr. Richman's statement in May 1975 alluding to a connection between the infection and the IUD, and the statement by Dr. Richman's associate that the dilatation and curettage was not necessitated by Nancy's pregnancy were adequate to chill any "lulling" by Dr. Richman and shift the burden of inquiry to plaintiffs long before the limitations period ran on their causes of action.

Plaintiffs' reliance on the *Witherell* cases does not persuade. In *Witherell* II, defendant, when sued for negligently prescribing an oral contraceptive to plaintiff, was estopped from asserting section 13—212 in his defense. (*Witherell*, 118 Ill. 2d at 331.) The court found in *Witherell* I that: defendant not only told plaintiff the contraceptive was not the source of her physical problems, but affirmatively ascribed them to a muscular disorder; and defendant persuaded plaintiff it was safe to resume taking the contraceptive after she voluntarily stopped. (*Witherell*, 85 Ill. 2d at 158.) Here, Dr. Richman never told Nancy her difficulties were caused by anything other than a uterine infection and never attempted to persuade her to continue wearing the Dalkon Shield. Furthermore, the plaintiff in the *Witherell* decisions promptly filed a complaint upon learning of that defendant's negligence. In contrast, plaintiffs in this case, who reasonably should have discovered Dr. Richman's alleged malpractice by April 1976, did not file their claim until 1985. (See *Witherell*, 85 Ill. 2d at 160.) The evidence presented by the parties raised no material and genuine questions of fact concerning equitable estoppel.

From the foregoing circumstances, we find no error in the circuit court's dismissal of counts III and IV of plaintiffs' complaint and, accordingly, we must affirm.

Affirmed.

STAMOS and SCARIANO, JJ., concur.