JAMES W. McINTYRE, Plaintiff-Appellant, v. CHRIST HOSPITAL[1] et al., Defendants (Joseph Cannon, Defendant-Appellee).

First District (2nd Division) No. 1—88—1716

Opinion filed March 21, 1989.—Rehearing denied April 29, 1989.

<hr>

[1]Pursuant to an agreed order, plaintiff dismissed defendants Christ Hospital, Dr. Karande and Dr. Chieng, incorrectly sued as Dr. Chen. The estate of Dr. Krolikowski remains as a defendant but is not a party to this appeal, which involves solely Dr. Cannon.

Randolph C. Greune and Burton S. Odelson, both of Odelson & Sterk, Ltd., of Evergreen Park (John J. Lowrey and Mary Jo Smerz, of counsel), for appellant.

Kiesler & Berman, of Chicago (Rory Cassidy, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This appeal arises from the circuit court's order granting defendant-appellee Dr. Joseph Cannon's (defendant's) motion for summary judgment, based on section 13—212 of the medical malpractice statute of limitations (Ill. Rev. Stat. 1985, ch. 110, par. 13—212).

James McIntyre (plaintiff) was born on September 13, 1963. On July 7, 1970, when plaintiff was six years old, defendant performed surgical repair of a hernia previously diagnosed by Dr. John R. Krolikowski, the family physician. Thereafter, plaintiff never again saw defendant.

At all times prior to and following the hernia surgery, plaintiff's testicles were undescended, according to plaintiff's affidavit, and at that time he did not know he had testicles, nor did he have any mass in that area or other indications that testicles were in fact present, but undescended.

Plaintiff visited Dr. Krolikowski regularly during grade and high school, at least once each year for physical examinations which included procedures wherein the doctor examined his genital area. Notwithstanding these procedures, Dr. Krolikowski never advised plaintiff or his mother, who accompanied him to the examinations until he reached high school age, that anything was wrong or abnormal with

plaintiff's genitalia. Plaintiff was not concerned about his missing testicles because of reassurances from Dr. Krolikowski that "[e]verything [was] fine," and assumed the condition was "a direct part and parcel" of the hernia surgery.

Around the time plaintiff entered his freshman year of high school, he began noticing he had "less in the way of testicles than the other guys." Throughout high school, he was self-conscious about his lack of testicles, but was never ridiculed by the other boys. He never confided in his parents or friends about his condition, not wishing to draw attention to himself. Because of Dr. Krolikowski's reassurances, he never thought something was "wrong," however.

Plaintiff became 18 years of age on September 13, 1981. From 1981 through 1984, when he worked for the Chicago Park District, plaintiff received mandatory preemployment physicals at the beginning of each summer from a Park District doctor. During the 1981-83 examinations, plaintiff could not recall whether the doctor asked him about any genital problems.

In December of 1983, when he was 20 years old, plaintiff developed a kidney stone for which he underwent surgery, performed by Dr. Frederick Wohlberg. Following the surgery, Dr. Wohlberg advised plaintiff he had undescended testicles. This was the first time plaintiff was aware that he even had testicles. He averred he previously had no reason to believe any remedial measures could have been taken regarding his condition and had no knowledge of the medical implications of undescended testicles. The next day, plaintiff underwent a surgical procedure that attempted to lower his testicles.

In an affidavit, Dr. Wohlberg stated that based upon a reasonable degree of medical certainty, defendant deviated from the appropriate standards of care in the earlier treatment of plaintiff's hernia, which required: detection of plaintiff's condition of undescended testicles in an examination that should have followed the surgery; informing plaintiff's parents of the condition; and further surgery to lower the testicles.

Plaintiff filed suit against defendant, claiming medical malpractice, on January 22, 1985, 13 months after Dr. Wohlberg informed him of the undescended testicles. The complaint alleged that defendant negligently failed to properly examine, diagnose, inform, and treat plaintiff for his ongoing condition of undescended testicles. The suit was filed over 14 years after the alleged malpractice (July 1970), and three years, four months after plaintiff reached majority.

Defendant moved for summary judgment in the circuit court, contending plaintiff's cause of action was time barred under section 13—

212. (Ill. Rev. Stat. 1985, ch. 110, par. 13—212.) He argued that plaintiff, upon reaching age 18 in 1981, knew or through the use of reasonable diligence should have known of his condition at some point during high school, and therefore should have brought this action within two years of his eighteenth birthday. The circuit court granted summary judgment for defendant, concluding that since plaintiff was aware of being considerably different, it was unreasonable as a matter of law for him not to inquire further into the existence of a cause of action arising from his condition.

Plaintiff appeals, arguing the circuit court erred in granting summary judgment because the question of whether he had actual or constructive knowledge of his injury and potential cause of action prior to his attaining majority was one of fact more properly determined by a trier of fact.

■■ ■ As a preliminary matter, section 13—212 bars claims related to medical treatment filed more than two years after a plaintiff knew or should have known of an alleged injury, and absolutely bars claims filed more than four years from the date of the act giving rise to the cause of action. (*Moore v. A.H. Robins Co.* (1988), 167 Ill. App. 3d 19, 23, 520 N.E.2d 1007, *appeal denied* (1988), 121 Ill. 2d 572, 526 N.E.2d 832.) The statute begins to run when plaintiff knows or reasonably should know of both the physical problem and the possibility that someone is at fault for its existence. (*Roper v. Markle* (1978), 59 Ill. App. 3d 706, 710, 375 N.E.2d 934; see also *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869 (*Witherell I*), *on remand* (1986), 148 Ill. App. 3d 32, 499 N.E.2d 46, *rev'd* (1987), 118 Ill. 2d 321, 515 N.E.2d 68 (*Witherell II*); *Moore v. A.H. Robins Co.*, 167 Ill. App. 3d at 23.) Prior to January 1, 1988, section 13—212, however, was subject to section 13—211 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—211) and the statutory period tolled for a surviving malpractice victim under the age of 18 until he attained majority.[2] *Dachs v. Louis A. Weiss Memorial Hospital* (1987), 156 Ill. App. 3d 465, 468, 509 N.E.2d 489.

■ A plaintiff must bring an action within two years of the date on which he knew or reasonably should have known of his injury, and also knew or reasonably should have known that it was wrongfully caused. (Ill. Rev. Stat. 1987, ch. 110, par. 13—212; *Saunders v.*

_____

[2]Sections 13—211 and 13—212 were amended in 1987 and section 13—211 no longer applies to actions brought under section 13—212 in cases filed after January 1, 1988. The rights of surviving malpractice victims under the age of 18 are now delineated in section 13—212(b). Ill. Rev. Stat. 1987, ch. 110, pars. 13—211, 13—212.

*Klungboonkrong* (1986), 150 Ill. App. 3d 56, 59, 501 N.E.2d 882.) This two-part inquiry is to be neither narrow nor expansive. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 414-15, 430 N.E.2d 976.) Under the statute, "wrongfully caused" does not mean knowledge by plaintiff of a specific defendant's negligent act or knowledge that an actionable wrong was committed; rather, a person knows or reasonably should know an injury is "wrongfully caused" when he possesses "sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." (*Knox College*, 88 Ill. 2d at 416; *Moore v. A.H. Robins Co.*, 167 Ill. App. 3d at 23.) The burden then falls on plaintiff to investigate further as to the existence of a cause of action. *Witherell*, 85 Ill. 2d at 156.

██ The inquiry of whether a plaintiff knew or reasonably should have known that his injury was caused by a defendant's wrongful conduct may involve the nature of the injury itself; the more obvious an injury, the more easily a plaintiff should be able to determine its cause. (*Saunders*, 150 Ill. App. 3d at 60.) If the injury is an aggravation of a physical problem which could develop naturally, absent negligent causes, a plaintiff is not expected to immediately know of its potentially wrongful cause. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 486, 473 N.E.2d 1322.) Until a plaintiff knows that his seemingly innocent condition is perhaps the result of another's negligent acts, he has no opportunity to discover that a cause of action exists. *Saunders*, 150 Ill. App. 3d at 60.

 Ordinarily, whether plaintiff knew or reasonably should have known both of his injury and that it was caused by a wrongful act are genuine issues of fact to be determined by the finder of fact. (*Witherell*, 85 Ill. 2d at 156.) Summary judgment is appropriate only where the pleadings, depositions, and affidavits, construed most strongly against the movant and most liberally in favor of the opponent, show that judgment should be granted as a matter of law. (*Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 403-04, 472 N.E.2d 822; *Saunders*, 150 Ill. App. 3d at 61.) If only one conclusion can be drawn from the undisputed facts, the question becomes one for the court. (*Witherell*, 85 Ill. 2d at 156.) Close questions on this issue, as here, should not be decided as matters of law, but are best left for juries. *Peterson v. Loseff* (1987), 159 Ill. App. 3d 16, 21, 512 N.E.2d 5.

Defendant points to the following statements and acknowledgments made by plaintiff at his deposition as demonstrating sufficient knowledge of the injury or problem: plaintiff admitted his condition

was a physical characteristic one would notice, "like having three fingers"; he articulated "in [his] own mind" that he had less bulk in the testicle area than other boys; and, although he was never ridiculed he was self-conscious of the problem, positioning himself in the high school locker room to conceal his genital area. Defendant further suggests that plaintiff knew things were not right and knew or should have known someone was at fault for his problem, because he thought his condition was attributable to the hernia surgery. This was a clear admission by plaintiff, defendant argues, that someone was at fault for his missing testicles, and provides the necessary concurrence between knowledge of the injury and its wrongful causation to start the statute of limitations running when plaintiff reached majority. (*Roper v. Markle*, 59 Ill. App. 3d at 710.) At this point, defendant concludes, the burden was upon plaintiff to inquire further into the existence of a cause of action. *Witherell*, 85 Ill. 2d at 156.

■ Defendant's conclusion overlooks an important factor, however, and must be rejected. Although plaintiff admits he had knowledge of the condition, and also thought it was caused by the hernia surgery, it does not necessarily amount to knowledge that the condition could have been *wrongfully* caused as a matter of law. His deposition testimony reveals he thought the condition was "part and parcel" of the surgery, which he never questioned, and while a result of the surgery, he didn't think it was wrongfully caused because of repeated reassurances by his family doctor that everything was fine.

Plaintiff also stated in his deposition and affidavit that he never thought that "something was amiss" or needed remedial procedures that might put him on notice of the wrongful cause of his condition until December 1983. Plaintiff avers that he had no apparent testicles either before or after surgery; he never experienced pain or bulging in the genital or lower abdomen area after the hernia operation; he always assumed he never had any testicles, and was never told of their undescended nature despite yearly physical examinations by Dr. Krolikowski and additional physicals by a Park District doctor; and, after Dr. Krolikowski's death, he did not see another physician who might have alerted him until the kidney stone problem in December 1983.

In looking at the nature of the injury claimed by plaintiff (failure to diagnose undescended testicles), therefore, it cannot be held as a matter of law that plaintiff knew or necessarily should have known his lack of descended testicles was caused by defendant's wrongful conduct. Further, defendant's failure to diagnose the undescended testicles is not the traumatic kind of injury that would immediately

alert plaintiff as to its existence.[3] (See *Lebrecht v. Tuli*, 130 Ill. App. 3d at 486-87; see also *Saunders*, 150 Ill. App. 3d at 60-61.) Defendant insists that plaintiff reasonably should have known of the wrongful causation by the time he was in high school to at least require him to investigate further, relying on *Witherell* (85 Ill. 2d at 156). There, the plaintiff experienced leg problems shortly after taking the medication; knew that the pill could cause blood clots; and knew she in fact had blood clots in her leg, upon which the court held that she had sufficient knowledge as a matter of law to put her on inquiry to investigate further. (85 Ill. 2d at 156-57.) Here, plaintiff was never told of his actual condition until December 1983; nor was he ever informed of a possible link between his condition and a potentially wrongful cause.

Closer in factual circumstances is *Paske v. Green* (1986), 142 Ill. App. 3d 367, 491 N.E.2d 1195. There, the plaintiff was unsatisfied with certain cosmetic aspects of her dental bridgework and had bleeding gums which she attributed to the bridgework. The *Paske* court, however, refused to equate plaintiff's dissatisfaction and discomfort from her bleeding gums as establishing knowledge of a wrongfully caused injury as a matter of law, although plaintiff's deposition revealed she thought her problem "came with the bridgework" and was "something she had to live with"; she did not see another dentist despite the ongoing bleeding condition of her gums because she thought "she just had to live with" the problem; and, she claimed she was not aware she suffered an injury until a later consultation with a second dentist. (142 Ill. App. 3d at 370-71.) Similarly, in the instant case, plaintiff thought that his condition was something that naturally came with the hernia operation but was not aware of a wrongful injury until his later consultation with Dr. Wohlberg. It cannot be said, therefore, as a matter of law, that only one reasonable conclusion may be drawn from the evidence.

■ Defendant's alternative argument, that the obvious nature of plaintiff's condition created "constructive knowledge" of the condition, also must be rejected. Defendant suggests *Ikenn v. Northwestern Memorial Hospital* (1979), 73 Ill. App. 3d 694, 392 N.E.2d 440,

---

[3]The classification of an injury as traumatic or nontraumatic is not considered a controlling factor. (*Bebee v. Fields* (1979), 79 Ill. App. 3d 1009, 1013, 398 N.E.2d 1214.) The only advantage derived from such a classification is that it "aids in the determination of the controlling factual issue in each case, namely, when did the plaintiff discover or when should he reasonably have discovered that the injury was caused by the defendant's wrongful conduct." *Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 813, 380 N.E.2d 816.

is controlling, a case which involved a plaintiff, blind since birth, who at the age of 22 learned that her blindness might have been caused by medical care rendered during the first four weeks of her life. The *Ikenn* court held as a matter of law that plaintiff's blindness was a physical problem which "imparted constructive knowledge that it was the result of a traumatic event occasioned by another's wrongful act" (73 Ill. App. 3d at 699), but there plaintiff made no allegation that she reasonably believed her condition was of innocent causation. (73 Ill. App. 3d at 699.) *Ikenn* is distinguishable from the instant case. The court in *Ikenn* specifically limited its holding to problems resulting from traumatic events (see *Marciniak v. O'Connor* (1981), 102 Ill. App. 3d 381, 385, 430 N.E.2d 536); the problem involved in the case *sub judice*, as noted above, is not of the traumatic type. Moreover, this case presents an important factor found missing in *Ikenn*: plaintiff here expressly stated that he always assumed his condition to be a natural, as opposed to a negligently caused, result of the operation. Most significantly, unlike *Ikenn*, plaintiff claims that he never possessed sufficient information to put him on inquiry to investigate further into a potential cause of action.

Plaintiff's deposition shows that his family physician regularly gave him a physical which included examination of his genital area. After this procedure, he was always told everything was fine. These reassurances are relevant to whether plaintiff was put on inquiry of a possible wrongful cause.[4] Given the close proximity of Dr. Krolikowski's reassurances with the examination of plaintiff's genitalia, we cannot say reasonable persons would not differ as to the reasonableness of plaintiff's failure to inquire further.

In addition, unlike cases such as *Witherell I* and *Moore*, nothing thus far has been shown to have happened to plaintiff that might "chill any lulling" resulting from Dr. Krolikowski's reassurances. (See, *e.g., Moore*, 167 Ill. App. 3d at 25-26.) Plaintiff's other sexual development (pubic hair, facial hair, change in voice) was normal; he never had any problems with the sac area; he never experienced pain or discomfort in his groin or abdomen until the kidney stone; and he never had reason to see a doctor other than Dr. Krolikowski for a comprehensive physical examination until 1983. The only indication of any problem was the ongoing existence of plaintiff's condition,

---

[4]Not to be inferred is that Dr. Krolikowski's reassurances can be used in an equitable estoppel argument against defendant. (See *Smith v. Cook County Hospital* (1987), 164 Ill. App. 3d 857, 518 N.E.2d 336.) These reassurances are relevant only to the information plaintiff had concerning his injury and its cause and whether his failure to inquiry further was reasonable.

which he thought was a natural result of the surgery. Given these circumstances, and construing them most favorably for plaintiff as we must under the rules, whether he possessed sufficient information to put a reasonable person on inquiry is a genuine issue of fact to be determined by a finder of fact. Entry of summary judgment was error.

For the foregoing reasons, the decision of the circuit court must be reversed, and the cause remanded for further proceedings.

Reversed and remanded.

EGAN, P.J., and SCARIANO, J., concur.