JEROME LUBIN *et al.*, Plaintiffs-Appellants, v. JEWISH CHILDREN'S BUREAU OF CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 1—00—3162

Opinion filed March 4, 2002.

Sheldon G. Kirshner, of Chicago, for appellants.

Jenner & Block, of Chicago (John B. Simon, Rebecca L. Raftery, Christine A. Picker, David D. Brown, and William L. Kuhn, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Jerome and Eve Lubin adopted Miriam Lubin in 1963. In 1999 the Lubins sued the Jewish Children's Bureau of Chicago (the Bureau), alleging that the Bureau fraudulently told them, before the adoption, that Miriam came from a family with no known mental or emotional problems. The trial court dismissed the complaint as untimely. We hold that the trier of fact must decide the issue of when the Lubins should have known that they had suffered an injury that was wrongfully caused. Therefore, we reverse the judgment of the trial court and remand for further proceedings.

Jerome and Eve Lubin adopted Philip Lubin in 1960. The next year they told the Bureau that they wanted to adopt a second child, but they would accept only a normal, healthy child whose parents had no known mental, intellectual or emotional problems. The Bureau placed a girl, Miriam, with the Lubins. The Bureau told the Lubins Miriam met their adoption criteria.

The Lubins had difficulty with Miriam during her infancy. Prior to adoption, the Lubins brought Miriam to a pediatrician to determine whether the difficulties presented signs of possible future mental health problems. The pediatrician said Miriam "was a difficult but normal child," without outward signs of mental health problems. The Lubins also consulted the Bureau's employee who had worked on Miriam's placement with the Lubins. The Bureau's employee tested Miriam and told the Lubins she found no signs of possible mental health problems. The Lubins decided to adopt Miriam in 1963.

When Miriam was 13 years old, doctors diagnosed her as schizophrenic. Miriam later had two children. Because Miriam lacked the ability to care for the emotionally disturbed children, a social service agency recommended placing them for adoption. Such placement required medical records for Miriam and Miriam's biological parents. The Lubins contacted the Bureau. In a letter dated June 26, 1997, the Bureau informed the Lubins that Miriam's birth mother came from a "family situation [that] was disturbed, and the whole family was in treatment. According to the record, the birth mother suffered from emotional problems, and was in treatment."

On June 25, 1999, the Lubins sued the Bureau for fraud and negligence, alleging that they would not have adopted Miriam if the Bureau had disclosed to them what it knew about Miriam's biological

mother and her family. The Bureau moved to dismiss the complaint based on the statute of limitations.

At the hearing on the motion the Lubins argued that until they received the letter in 1997, they had no way of knowing that Miriam's family had emotional problems or that the Bureau knew of such problems. The court said:

> "Here you have 30 years from the time of adoption and it's a fairly difficult situation. ***
>
> ***
>
> *** As a practical matter in terms of how far the Court goes with an obligation, in keeping somebody obligated for something, for how long a time.
>
> It's your contention, forgetting human mortality, that this thing could have gone on if the person were there for as long as the parties lived in the country. There's no termination period in your theory of the case.
>
> * * *
>
> *** Except for *** the letter, the time would never run to keep you from filing. That's what you're saying. And one of the things that we're supposed to do as judges is never lose our common sense. ***
>
> * * *
>
> *** How about when they knew or should have known that the child suffered from hereditary mental illness?
>
> The real problem is do they have the right to wait for twenty years for the letter to pop up before they do anything ***.
>
> ***
>
> *** I think you've waited too long.
>
> * * *
>
> I just think you're out of luck under the Statute of limitations."

The Lubins appended a proposed amended complaint to their motion to reconsider. The court denied the motion and denied leave to amend because the amendment did not substantially affect the limitations period.

■ We review *de novo* the decision to dismiss the complaint on the pleadings. *Zurich Insurance Co. v. Amcast Industrial Corp.*, 318 Ill. App. 3d 330, 333, 742 N.E.2d 337 (2000). The parties agree that section 13—205 of the Code of Civil Procedure states the applicable limitations period. 735 ILCS 5/13—205 (West 1996). That section provides that "all civil actions not otherwise provided for[ ] shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13—205 (West 1996). A cause of action accrues, within the meaning of the

statute, when the plaintiff "knew or reasonably should have known that it was injured and that the injury was wrongfully caused." *Superior Bank FSB v. Golding*, 152 Ill. 2d 480, 488, 605 N.E.2d 514 (1992).

■ In this context, plaintiffs reasonably should know that an injury is wrongfully caused when "they possess enough information about the injury to alert a reasonable person to the need for further inquiries to determine if the cause of the injury is actionable at law." *La Salle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899, 902, 635 N.E.2d 564 (1994). But if the injury could develop naturally, without any wrongful cause, knowledge of the injury does not immediately put the plaintiff on inquiry concerning a potential wrongful cause. *McIntyre v. Christ Hospital*, 181 Ill. App. 3d 76, 81, 536 N.E.2d 882 (1989). "The limitations period begins to run when the plaintiff becomes aware that the cause of his problem stems from another's negligence and not from natural causes." *Saunders v. Klungboonkrong*, 150 Ill. App. 3d 56, 60, 501 N.E.2d 882 (1986).

■ Ordinarily, the trier of fact must decide the point at which a plaintiff reasonably should have known that a wrongful act caused his injury. *Witherell v. Weimer*, 85 Ill. 2d 146, 156, 421 N.E.2d 869 (1981). But the court properly decides the issue without trial if all reasonable persons would draw the same conclusion from the undisputed facts. *Witherell*, 85 Ill. 2d at 156. The court should permit the trier of fact to decide close questions concerning the commencement of the limitations period. *McIntyre*, 181 Ill. App. 3d at 81.

In *McIntyre* the defendant surgically repaired the plaintiff's hernia when the plaintiff was six years old. After the plaintiff turned 20, a surgeon, in the process of removing a kidney stone, found that the plaintiff had undescended testicles, requiring further surgery. In the surgeon's opinion, the defendant should have detected and repaired the condition in examinations following the hernia surgery. The plaintiff sued the defendant for malpractice.

The defendant argued that the plaintiff should have known that he suffered from undescended testicles at least by his eighteenth birthday. In his deposition the plaintiff admitted that he knew his testicle area looked different from that of other boys, and he thought the difference attributable to the hernia surgery. The trial court granted summary judgment in favor of the defendant based on the statute of limitations.

The appellate court reversed the judgment and remanded for the trier of fact to determine when the plaintiff should have known the condition was wrongfully caused. The court said:

"Although plaintiff admits he had knowledge of the condition, and

also thought it was caused by the hernia surgery, it does not necessarily amount to knowledge that the condition could have been *wrongfully* caused as a matter of law. His deposition testimony reveals he thought the condition was 'part and parcel' of the surgery, which he never questioned, and while a result of the surgery, he didn't think it was wrongfully caused because of repeated reassurances by his family doctor that everything was fine." (Emphasis in original.) *McIntyre*, 181 Ill. App. 3d at 82.

Similarly, in *La Salle National*, the plaintiff hired the defendant to install insulation materials as part of a unique heating system in its new building. The first tenants complained that the building was too cold, and the plaintiff began investigating the cause of the problem in 1976. In 1978 and 1979 the plaintiff made minor repairs that alleviated the problem somewhat. But when utility rates increased in 1985, the plaintiff hired a consultant to reassess the entire heating system. The consultant found that the defendant had improperly installed the insulation, and the insulation it installed did not conform to design specifications. The plaintiff then sued the defendant for negligence. The trial court granted the defendant summary judgment based on the statute of limitations, finding that the plaintiff had sufficient notice of the possibility of wrongful causation by 1977.

The appellate court reversed, finding that reasonable persons could draw divergent inferences concerning when the plaintiff should have known of the wrongful causation. The court observed that the experts hired before 1985 gave the plaintiff

"conflicting explanations for the temperature loss: some pointed to actionable conduct by some of the contractors and subcontractors who participated in construction. Others pointed to a failure of the Apparel Center employees and tenants to follow procedures that would insure efficient operation of the heat-by-light system. That some explanations for the temperature problems may have been actionable, while others pointed to the gremlins in any new, complex construction or the failure of the Bank itself to follow procedures, does not trigger the statute. The statute is triggered when a person has in hand sufficient facts such that a reasonable person knows or should know the problem is wrongfully caused.

\*\*\* There was evidence that the insulation was missing in certain areas, but the Bank was presented with the explanation that the installers of the electrical outlets caused these problems. Further, the Bank presented the unrebutted testimony of an expert who testified that the displacement of insulation in isolated spots was common to newly constructed buildings and not below industry standards.

\*\*\*

\*\*\* [I]t is possible that the several nonactionable explanations for the heat loss were enough to assuage the Bank's concern over the cause of the heating problem." *La Salle National*, 262 Ill. App. 3d at 904-05.

■ Here, the Lubins knew when they adopted Miriam that the Bureau could not guarantee Miriam's future health and happiness. By adopting a child they took all the risks of child-rearing, including the possibility of mental illness. They sought to reduce the risks somewhat by requesting a normal, healthy child from a family with no known mental, intellectual or emotional problems. But even children from such families may sometimes develop severe mental problems, including schizophrenia. The Lubins assumed the risk that their normal healthy child from a healthy family would later develop a mental illness. Miriam's subsequent development of schizophrenia did not conclusively prove that the Bureau engaged in any negligent conduct or deceived the Lubins in any way about what the Bureau knew at the time of the adoption. Reasonable persons could disagree concerning the question of whether Miriam's schizophrenia gave the Lubins sufficient notice that the Bureau may have acted wrongfully. Following *McIntyre* and *La Salle National*, we hold that the trier of fact must determine when the cause of action for negligence and fraud accrued to the Lubins.

The trial judge made several comments at the argument on the motion to dismiss concerning the length of time from the alleged tortious act to the filing of the lawsuit. As the judge suggested, under the discovery rule the cause of action may accrue almost a lifetime after the tort occurs, if the adopting family does not discover the fraud until late in the adopted child's life. The discovery rule, as applied in medical malpractice and construction contexts, created similar problems of long-tailed liability. In response, the General Assembly enacted statutes of repose for those contexts. See 735 ILCS 5/13—212(a), 13—214(b) (West 1998); *O'Brien v. O'Donoghue*, 292 Ill. App. 3d 699, 702, 686 N.E.2d 688 (1997). But the legislature has enacted no statute of repose applicable to adoptions. Regardless of the strength of the policy reasons for adopting such a repose period, this court lacks the legislative power to create a repose period applicable to this case.

Following precedent concerning the discovery rule, we cannot say as a matter of law that the diagnosis of Miriam's schizophrenia imposed on the Lubins a duty to inquire whether the Bureau acted negligently or fraudulently when it told the Lubins that Miriam was a normal, healthy infant from a family with no known mental or emotional problems. We reverse the trial court's decision to award the

Bureau judgment on the pleadings and remand for proceedings consistent with this order.

Reversed and remanded.

COHEN, P.J., and COUSINS, J., concur.