JOHN ROE *et al.*, Plaintiffs-Appellants, v. JEWISH CHILDREN'S BUREAU OF CHICAGO, Defendant-Appellee.

First District (6th Division)   Nos. 1—00—0246, 1—00—3034 cons.

Opinion filed May 16, 2003.

122

Sheldon G. Kirshner, of Chicago, for appellants.

John B. Simon, Rebecca L. Raftery, Christine A. Picker, David D. Brown, and William L. Kuhn, all of Jenner & Block, of Chicago, for appellee.

JUSTICE TULLY delivered the opinion of the court:

These consolidated appeals arise out of plaintiffs', John and Mary Roe's, suit against defendant Jewish Children's Bureau of Chicago, seeking damages incurred as the result of their adoption of their son, Larry, through defendant. Plaintiffs alleged that defendant made false

statements regarding the mental health of Larry's biological mother and that Larry later developed a mental illness. Plaintiffs filed a complaint against defendant sounding in fraud, negligence, and breach of contract. Plaintiffs' complaint also included a count sounding in negligence brought on behalf of their daughter, Jane, whom they adopted through defendant after adopting Larry. Defendant moved to dismiss plaintiffs' complaint, and the trial court dismissed the breach of contract count. Defendant subsequently moved for summary judgment on the remaining counts, and the trial court granted defendant's motion. In No. 1—00—0246, plaintiffs timely appeal, contending: (1) the trial court erred when it held that they had not adequately pled a cause of action for breach of contract; (2) the trial court erred by limiting discovery and striking plaintiffs' affidavits; (3) the trial court erred in holding that their claims were barred by the statute of limitations; (4) the trial court erred in holding that they could not sustain a cause of action for fraud; and (5) the trial court erred in holding that they could not sustain a cause of action for negligence. We affirm in part, reverse in part, and remand the matter for further proceedings.

While appeal No. 1—00—0246 was pending, plaintiffs moved in the trial court to supplement the record on appeal pursuant to Supreme Court Rule 329 (134 Ill. 2d R. 329). The trial court denied plaintiffs' motion. In No. 1—00—3034, plaintiffs appeal, contending the trial court erred when it denied their motion to supplement the record. We dismiss this appeal.

## BACKGROUND

The facts, as set forth in the allegations of plaintiffs' complaint, are relatively straightforward. In March 1971, plaintiffs approached defendant regarding the possibility of adopting a child. Plaintiffs told defendant that they would only accept for adoption a child whose parents were normal mentally, intellectually, and emotionally, and who had no history of psychiatric problems. On November 7, 1973, Larry Roe was born to Jane Doe and John Doe. Defendant told plaintiffs that Jane Doe had no health problems. In fact, this statement was false and Jane Doe had a history of emotional problems including psychiatric hospitalization. Defendant placed Larry with plaintiffs in February 1974, and they adopted him on January 17, 1975. In May 1975, defendant placed a second child, Jane Roe, with plaintiffs. Plaintiffs adopted Jane on April 1976. After they adopted Jane, plaintiffs were advised by medical professionals that Larry was suffering from a psychiatric disorder with features of autism and schizophrenia.

In February 1991, plaintiffs were contacted by John Doe, who

identified himself as Larry's biological father. John Doe informed plaintiffs of the circumstances surrounding Jane Doe's mental health history at the time of the adoption of Larry. Plaintiffs alleged that they did not discover that the statements made by defendant regarding Jane Doe's mental health history were false prior to being contacted by John Doe.

On February 8, 1993, plaintiffs filed a complaint against defendant. Counts I and II of the complaint alleged fraud on behalf of plaintiffs. Count III alleged negligence on behalf of plaintiffs. Count IV alleged negligence on behalf of Jane Roe. Count V alleged breach of contract on behalf of plaintiffs. The relevant allegations of plaintiffs' complaint are set forth as necessary in the discussion section of this order.

On December 8, 1993, defendant filed a motion to dismiss plaintiffs' complaint. The trial court subsequently denied defendant's motion as to counts I through IV of the complaint. However, the trial court granted defendant's motion with regard to count V, the breach of contract claim. Plaintiffs did not seek leave to amend their complaint.

The matter remained pending for approximately five years while the parties conducted discovery. On January 22, 1999, defendant filed a motion for summary judgment. Defendant argued, *inter alia*, that plaintiffs failed to file their complaint within the applicable statue of limitations and that plaintiffs could not establish that the alleged fraud or negligence caused their injury because at the time Larry was adopted there was no known causal connection between the mental condition of Jane Doe and Larry's subsequent mental impairment. Defendant supported its motion for summary judgment with the affidavits of several experts regarding the inheritability of mental illness and the state of knowledge regarding the inheritability of mental illness in 1974.

Plaintiffs filed a response to defendant's motion for summary judgment and filed various affidavits in support of their response including affidavits from each plaintiff. Defendant subsequently moved to strike plaintiffs' affidavits. Plaintiffs filed a response to defendant's motion to strike and attached additional affidavits to their response. The relevant portions of defendant's motion for summary judgment and plaintiffs' response are set forth in the discussion section of this order.

The trial court granted defendant's motion to strike and defendant's motion for summary judgment. Plaintiffs subsequently filed a motion to reconsider. The trial court denied plaintiffs' motion to reconsider, and in No. 1—00—0246, plaintiffs timely appealed.

While appeal No. 1—00—0246 was pending, plaintiffs filed a mo-

tion to supplement the record. The trial court denied plaintiffs' motion, and in No. 1—00—3034, plaintiffs timely appealed. The relevant circumstances surrounding plaintiffs' motion to supplement the record are set forth in the discussion section of this order.

## DISCUSSION

■ Before reaching the merits of this appeal, we must address the question of the contents of the record. In No. 1—00—3034, plaintiffs contend that the trial court erred when it denied their request to supplement the record on appeal with the record of the adoption proceedings involving Larry's biological sibling, Jerome F., and with the complete transcripts of the depositions of Carol Amadio and Edythe Jastram. After plaintiffs filed their brief raising this issue, they filed a motion in this court to supplement the record on appeal with the juvenile court records of Jerome F. This court granted plaintiffs' motion on February, 25, 2002. Accordingly, appeal No. 1—00—3034 is moot to the extent that it addresses the trial court's denial of plaintiffs' motion to supplement the record on appeal with these records. Plaintiffs presented no arguments related to the trial court's failure to supplement the record with the complete deposition transcripts. The failure to comply with Supreme Court Rule 341 and provide this court with a coherent argument supported by citations to the record and relevant authority waives an issue on appeal. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001; *Hoff v. Mayer, Brown & Platt*, 331 Ill. App. 3d 732, 741 (2002). Accordingly, plaintiffs have waived this issue on appeal. Because the only issues presented in appeal No. 1—00—3034 are moot or waived, we hereby dismiss that appeal.

■ Plaintiffs contend that the trial court erred when it dismissed their breach of contract count. We review *de novo* a motion to dismiss under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)). *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 738 (2001). When the sufficiency of a complaint is challenged by a section 2—615 motion, all well-pleaded facts are taken as true and this court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Pavlik*, 326 Ill. App. 3d at 738.

■ To plead a cause of action for breach of contract, a plaintiff must allege the existence of a contract, a breach by the defendant, performance of all conditions to be performed by plaintiff, and damages to plaintiff as a consequence. *Disk Jockey Referral Network, Ltd. v. Ameritech Publishing of Illinois*, 230 Ill. App. 3d 908, 912 (1992).

"Where the action is premised on a contract which purportedly has been accepted orally, the plaintiff must specifically set forth the facts supporting that acceptance." *Disk Jockey Referral*, 230 Ill. App. 3d at 913. A bare allegation that a contract existed is nothing more than a legal conclusion, which may not be admitted as true by a motion to dismiss. *Disk Jockey Referral*, 230 Ill. App. 3d at 913.

■ On appeal, plaintiffs argue that their complaint set forth facts establishing offer and acceptance of an oral contract. However, plaintiffs merely cite to the allegedly relevant paragraphs of their complaint and provide no additional argument. For example, plaintiffs do not identify in their brief who made an offer or the manner in which it was accepted. We have examined the portions of plaintiffs' complaint cited and their brief and find no support for plaintiffs' assertions regarding the existence of a contract. For example, paragraph 35 of plaintiff's complaint states:

> "Under the agreement of March, 1971, Defendants were to conduct an in-depth social investigation concerning any child to be presented to Plaintiffs for placement for adoption, as well as the child's biological parents, and to fully report their findings to Plaintiffs."

Plaintiffs cite this paragraph as an example of facts alleging offer. However, there is nothing in this allegation of the complaint from which we could determine whether the contract was based on an offer from defendant such as "we will perform a social investigation" or an offer from plaintiffs such as "we will pay you to perform a social investigation." Plaintiffs' arguments on appeal provide no assistance in determining which possible interpretation they would ask us to accept. We find similar deficiencies in the paragraphs of the complaint that plaintiffs cite as allegations of acceptance and consideration. Therefore, we determine that plaintiffs' complaint failed to adequately allege the existence of a contract. Accordingly, we conclude that the trial court did not err when it dismissed the contract claim contained in plaintiffs' complaint.

■ Plaintiffs contend that the trial court erred in limiting discovery and striking plaintiffs' affidavits. Plaintiffs argue that the trial court abused its discretion because it deprived them of an *in camera* inspection of the redacted documents concerning Larry's mother. Plaintiffs' argument presents no coherent legal basis for evaluating the trial court's ruling on this issue. In fact, in their opening brief, plaintiffs provide no citation to the record from which we could determine what order, if any, the trial court entered with regard to an *in camera* inspection of these records. Moreover, plaintiffs have provided no citation to relevant authority to support this argument. Accordingly, we find that

plaintiffs have waived this issue on appeal. See *Hoff*, 331 Ill. App. 3d at 741.

■ Similarly, we find that plaintiffs have waived most of the remaining arguments raised as part of this contention in their opening brief. Plaintiffs argue that the trial court erred when it refused to open the court records of Larry's adoption. However, plaintiffs support this argument with nothing more than a citation to the general standards governing a motion for summary judgment, and provide no citation to any authority that addresses either the confidentiality of adoption records or the circumstances under which such confidentiality may be breached. Plaintiffs' arguments regarding their request to add expert witnesses are similarly lacking in citation to relevant authority. Accordingly, we find that plaintiffs have waived these issues on appeal. See *Hoff*, 331 Ill. App. 3d at 741.

■ We believe plaintiffs' final argument in this contention warrants further attention. Plaintiffs argue that the trial court erred when it struck their affidavits. It is perhaps misleading to refer to this as an argument, because plaintiffs' discussion of this issue in their opening brief consists of nothing more than the identification of the issue as one of their point headings in their argument section. Defendant nonetheless responds in its brief and argues that the trial court properly struck the affidavits as violating Supreme Court Rule 191 (145 Ill. 2d R. 191). Plaintiffs, belatedly, address this issue in their reply brief. Although plaintiffs have waived this issue by failing to address it in their opening brief, waiver is a limitation on the parties, not on the courts (see *A.J. Maggio Co. v. Willis*, 316 Ill. App. 3d 1043, 1048 (2000)), and summary judgment is a drastic remedy (*Wood v. National Liability & Fire Insurance Co.*, 324 Ill. App. 3d 583, 585 (2001)). We believe that the question of whether the trial court properly struck plaintiffs' affidavits is central to the question of whether summary judgment was proper. Accordingly, we believe that the interests of justice weigh in favor of considering the merits of this issue and against a strict application of the waiver rule.

■ The content of affidavits offered in opposition to a motion for summary judgment is governed by Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)). Rule 191 provides in pertinent part:

> "Affidavits in support of and in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible into evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 145 Ill. 2d R. 191(a).

A court's construction of supreme court rules is comparable to the construction of statutes and is a question of law that it is reviewed *de novo*. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002). Likewise, a court's determination of whether an affidavit offered in connection with a motion for summary judgment complies with Rule 191 is a question of law subject to *de novo* review. See *Jackson v. Graham*, 323 Ill. App. 3d 766, 774 (2001).

In the case before us, plaintiffs filed several affidavits in opposition to defendant's motion for summary judgment. The original affidavits simply stated that all of the allegations of the complaint and the facts section of plaintiffs' brief in opposition to the motion for summary judgment were true except as represented on information and belief. We believe that these affidavits were wholly insufficient to meet the standards of Rule 191(a). For example, the affidavits do not state the facts with particularity and they make no showing that plaintiffs would be competent to testify. Such affidavits are generally considered inadequate to defeat a motion for summary judgment. See *Hedrick v. Goodwin Brothers, Inc.*, 26 Ill. App. 3d 327, 329 (1975). We determine that the trial court properly struck the original affidavits filed by plaintiffs.

However, plaintiffs filed additional affidavits in response to defendant's motion to strike the original affidavits. Portions of these additional affidavits suffer from the same deficiencies as the original affidavits. For example, the additional affidavits refer, without particularity, to plaintiffs' ability to testify to the facts contained in the original affidavits, which themselves referred to the facts contained in the complaint without particularity. However, the additional affidavits do contain some allegations of fact that appear to meet the standards of Rule 191(a). For example, both plaintiffs aver that they told Edythe Jastram, a representative of defendant, that they would not accept a child for adoption whose parents had a history of mental health problems. Accordingly, we find that at least some portions of the additional affidavits meet the minimum requirements of Rule 191(a). Generally, when only portions of an affidavit are improper under Rule 191(a), a trial court should only strike the improper portions of the affidavit. *Cincinnati Cos. v. West American Insurance Co.*, 287 Ill. App. 3d 505, 514 (1997). Therefore, we determine that the trial court erred when it struck plaintiffs' affidavits in their entirety. However, we will consider only those portions that meet the requirements of Rule 191(a) to determine whether the trial court properly granted summary judgment in defendant's favor.

Plaintiffs' remaining contentions relate to the proper standard for granting summary judgment. Appellate courts apply a *de novo*

standard when reviewing summary judgment rulings. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Where there are no genuine issues of material fact, summary judgment is a proper method of disposing of a cause. *Smith v. Allstate Insurance Co.*, 312 Ill. App. 3d 246, 251 (1999). Summary judgment is appropriate only when the pleadings, depositions, admissions, and affidavits on file, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Smith*, 312 Ill. App. 3d at 251. In response to a motion for summary judgment, a plaintiff is not required to establish his or her case as he or she would at trial, but he or she must present some factual basis that would arguably entitle him or her to a judgment. *Wortel v. Somerset Industries, Inc.*, 331 Ill. App. 3d 895, 899 (2002).

Plaintiffs contend that the trial court erred when it held that their claim was barred by the statute of limitations. The parties apparently agree that plaintiffs' complaint was subject to the five-year statute of limitations contained in section 13—205 of the Code of Civil Procedure (735 ILCS 5/13—205 (West 1992)).[1] Plaintiffs argue that the statute of limitations did not begin to run until 1991, when they were contacted by Larry's biological father. Plaintiffs argue that they did not discover that they had been injured as the result of fraud until they learned that the statements made to them regarding the health of Larry's biological mother were false. Defendant responds that plaintiffs should have known of their injury in 1976 when they discovered Larry's impairment. We believe that this issue is resolved by this court's recent opinion in *Lubin v. Jewish Children's Bureau of Chicago*, 328 Ill. App. 3d 169 (2002).

The *Lubin* case involved the same defendant in a factual scenario strikingly similar to the one presented by the case at bar. In *Lubin*, the plaintiffs adopted a child through defendant in 1960. When the child was 13 years old, she was diagnosed with schizophrenia. In 1997, the plaintiffs requested medical records from defendant and were informed that the birth mother suffered from emotional problems and had been in treatment. The plaintiffs alleged that they had informed defendant that they would not accept a child for adoption whose parents had known mental, intellectual, or emotional problems and

---

[1]Defendant cites this code section in its arguments regarding the statute of limitations. Plaintiffs have managed to craft their statute of limitations arguments without any citation to the applicable statute of limitations. However, we assume that their failure to identify a different section of the code in response to defendant's arguments constitutes an agreement that the five-year statute of limitations is applicable.

filed a complaint against defendant sounding in fraud. Defendant moved to dismiss the complaint based on the statute of limitations. The trial court held that the complaint was barred by the statute of limitations, and the reviewing court reversed. *Lubin*, 328 Ill. App. 3d at 174-75.

▆ Generally, a cause of action accrues under the statute when the plaintiff " 'knew or reasonably should have known that it was injured and that the injury was wrongfully caused.' " *Lubin*, 328 Ill. App. 3d at 171-72, quoting *Superior Bank FSB v. Golding*, 152 Ill. 2d 480, 488 (1992). The *Lubin* court observed that although the plaintiffs attempted to reduce the risks that their child would develop a mental illness by requesting a child from a family with no known mental illnesses, even children from such families sometimes develop severe mental problems. *Lubin*, 328 Ill. App. 3d at 174. The court held that, accordingly, when the child developed schizophrenia, that development did not conclusively prove that defendant had acted negligently or deceived the plaintiffs at the time of the adoption. *Lubin*, 328 Ill. App. 3d at 174. The *Lubin* court concluded that whether the child's development of schizophrenia was sufficient to impose on the plaintiffs a duty to inquire whether defendant had acted negligently or fraudulently and when the cause of action accrued were issues for the trier of fact to determine. *Lubin*, 328 Ill. App. 3d at 174.

▆ We believe that a similar analysis applies to the case before us. In their affidavits, plaintiffs averred that they did not learn that the representations made by defendant regarding the health of Larry's biological mother were false until 1991, when they were contacted by Larry's biological father. Plaintiffs filed suit within five years of this date. However, plaintiffs learned that Larry was suffering from a mental illness many years earlier. Like the *Lubin* court, we do not believe that we can conclude as a matter of law that plaintiffs were placed on notice that they had been injured or, more precisely, that their injury was wrongfully caused, when they discovered that Larry was suffering from a mental illness. The gist of plaintiffs' fraud and negligence claims against defendant is that defendant made a false statement regarding Larry's mother's health. When Larry began to exhibit signs of mental illness, it was possible that his illness was one of those cases that arise without any family history of mental illness. It was also possible that Larry's mother had a history of mental illness but that the information she had given to defendant was false or misleading. In either case, plaintiffs would have no cause of action against defendant for fraud because defendant would not have made a false statement. Accordingly, we cannot conclude, as a matter of law, that the manifestation of Larry's mental illness placed plaintiffs on

notice that they had been wrongfully injured. Therefore, the well-pleaded allegations of the complaint establish that the injury and the knowledge that it was wrongfully caused indicate that the statute of limitations was met.

■ Plaintiffs finally contend that the trial court erred when it held that they had not established a cause of action for fraud and that the trial court erred when it held that they had not established a cause of action for negligent misrepresentation. We believe that these two contentions are so closely related that they can be addressed together. Causes of action for misrepresentation generally fall into two categories, fraudulent misrepresentation and negligent misrepresentation. The elements of a cause of action for fraudulent misrepresentation are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Soules v. General Motors Corp.*, 79 Ill. 2d 282, 286 (1980). The elements of a cause of action for negligent misrepresentation are similar and are: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information. *Fox Associates Inc. v. Robert Half International, Inc.*, 334 Ill. App. 3d 90, 94 (2002). The two torts differ only in the mental state required; in fraudulent misrepresentation, the defendant must know that the statement is false, while in negligent misrepresentation, the defendant need only be negligent in ascertaining the truth of the statement. *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 323 (1998).

Plaintiffs attached numerous documents to their brief in opposition to defendant's motion for summary judgment. One document was a copy of defendant's file regarding Larry's adoption which included the following statement about Larry's biological mother:

> "This woman has a history of physical complaints seemingly often hysterical in origin. There is a history of epileptic seizures, said by doctors to be self-induced. History of psychiatric hospitalizations. Dx: hysterical character disorder. History of amphetamine addiction."

The document also indicated that Larry's biological mother was farsighted and had taken numerous medications. Similar statements were contained at several other locations within defendant's records.

However, in a letter to plaintiffs, defendant made the following statement regarding Larry's biological mother: "She wears glasses for farsightedness, has no known allergies, is in good physical health." We believe that a comparison of these two statements is sufficient to create a question of material fact as to whether the statement made to plaintiffs was false. We further believe that a question of fact exists as to whether when defendant made the statement it did so knowingly or negligently.

The parties' arguments on appeal center largely on the fifth element of each cause of action and revolve around the requirement that a plaintiff's injuries must be caused by the misrepresentation. Defendant argues that at the time Larry was adopted it was not believed that mental illness was inheritable. Defendant further argues that, accordingly, it was not foreseeable that plaintiffs could be injured by a false statement regarding the biological mother's mental health and that the false statement could not be the proximate cause of plaintiffs' injuries. Plaintiffs argue that they need only demonstrate that they would not have adopted Larry absent the allegedly false statement.

█ Defendant cites several fraud cases in support of its argument. See *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588 (1994); *Spiegel v. Sharp Electronics Corp.*, 125 Ill. App. 3d 897 (1984); *Shah v. Chicago Title & Trust Co.*, 119 Ill App. 3d 658 (1983). In *State Security*, the reviewing court held: "We have consistently and emphatically held that plaintiffs' injuries in fraud actions must directly and proximately result from defendants' misrepresentations and cannot be assessed upon mere speculation or hypothetical assumptions." *State Security*, 258 Ill. App. 3d at 592.

An adoption creates a parent-child relationship where none existed before and alters forever the lives of both the child and the adoptive parents. We recognize the precedential value of prior cases discussing fraudulent misrepresentation in commercial settings. However, an adoption agency interjects itself into a process that alters permanently the structure of families and affects fundamental human relationships. We are loathe to adopt a view of causation that imposes on the participants in such an important process nothing more than the morals of the marketplace. See *Michael J. v. County of Los Angeles, Department of Adoptions*, 201 Cal. App. 3d 859, 875, 247 Cal. Rptr. 504, 513 (1988) ("As trustees of the child's destiny the [adoption] agency was obligated to act with morals greater than those found in a purveyor's common marketplace"). Accordingly, we believe that our analysis of the causation issue is better served by considering the case law that has developed around the adoption process itself.

■ The leading case on "wrongful adoption" in Illinois is *Roe v. Catholic Charities*, 225 Ill. App. 3d 519 (1992). Although many cases refer to "wrongful adoption," we recognize, as the *Catholic Charities* court did, that wrongful adoption is not a separate species of tort, but is instead nothing more than a phrase that encompasses the application of various traditional tort principles to cases arising in an adoption setting. See *Catholic Charities*, 225 Ill. App. 3d at 524. The *Catholic Charities* case involved three adopted children and three sets of adoptive parents. In each case, the adoptive parents alleged that they requested a "normal, healthy" child and that they were told that their particular child was a normal child who only needed lots of love. However, in each case, the defendant adoption agency knew the child had exhibited abnormal or violent behavior and two of the children had received psychiatric treatment. The children continued to display abnormal behavior after they were adopted and the adoptive parents incurred extraordinary expenses in providing treatment for the children. The adoptive parents subsequently filed claims against the adoption agency alleging fraud and negligent misrepresentation.

The *Catholic Charities* court examined precedents from several other jurisdictions and concluded that fraud and negligent misrepresentation were valid causes of action against an adoption agency arising out of false statements made in connection with an adoption. *Catholic Charities*, 225 Ill. App. 3d at 529, 538. In reference to the plaintiffs' fraud claims, the reviewing court observed:

"We join with these learned courts and require no guarantee of the future health and happiness of the adopted children. To do so would place an unbearable burden upon adoption agencies. We merely require adoption agencies to follow the law. Although at the time of the adoptions there was no statute requiring disclosure, the agency was prohibited from committing fraud." *Catholic Charities*, 225 Ill. App. 3d at 529, citing *Michael J.*, 201 Cal. App. 3d at 875, 247 Cal. Rptr. at 513; *Burr v. Board of County Commissioners*, 23 Ohio St. 3d 69, 77, 491 N.E.2d 1101, 1109 (1986).

In response to the argument that imposing fraud liability on adoption agencies would make the placement of handicapped children more difficult, the *Catholic Charities* court held that a policy of truth and straightforward dealing, rather than fraud, would actually help with the placement of handicapped children in appropriate homes. *Catholic Charities*, 225 Ill. App. 3d at 529. The reviewing court observed:

"It requires a person of special strength and strong values to adopt a handicapped child. This person will go into the adoption with eyes open, presumably emotionally and financially able to support a handicapped child. These parents will be prepared to accept the

children as they are. In addition, if the adoptive parents know of any potential problems with a child, they can see to it that the child receives appropriate treatment as soon as possible. Early detection and treatment may lead to a greater chance of cure or effective treatment. The children deserve the opportunity for early treatment." *Catholic Charities*, 225 Ill. App. 3d at 529.

We believe that this passage reveals a central concern in adoption cases, *i.e.*, that fraud by adoption agencies should be discouraged because it deprives the adoptive parents of the right to make an informed decision regarding the potential risks involved in the adoption of a child.

■ We believe that our analysis of the causation element should be guided by the same concern regarding an adoptive parent's right to make an informed decision. Accordingly, we conclude that in order to establish the causation element in a fraudulent misrepresentation or negligent misrepresentation cause of action, an adoptive parent must establish that he asked a question that a rational parent would consider relevant to gauging the future risks of serious mental or physical illness and that, but for the adoption agency's false statement regarding that risk, he would not have adopted the child.

■ Plaintiffs' affidavits each averred:

"That prior to the placement of [Larry] for adoption with me and my [spouse], I told [Edythe Jastram], *inter alia*, that my [spouse] and I would not accept for placement for adoption any child whose biological parents, either of them, had a history of mental health problems or intellectual disorders, or serious medical problems, and [Edythe Jastram] agreed to these conditions. *** I further state that I would not have adopted [Larry] *** had I known of [Larry's] biological mother's mental health and medical background."

We believe that these assertions of fact are sufficient to establish the causation element of a fraudulent or negligent misrepresentation claim as we discussed above. Plaintiffs asked a question regarding the health of Larry's biological parents. A jury could conclude that this question was of the type a reasonable parent would rely upon when weighing the risks that a child would later develop a serious health problem. As we observed above, plaintiffs presented facts from which a jury could conclude that defendant made a false statement in response to that question. Finally, plaintiffs asserted that they would not have adopted Larry if they had received a truthful response to their inquiry.

Defendant argues that plaintiffs presented insufficient evidence from which a jury could find an intent to deceive. Defendant argues that because it did not know Larry's mother's condition was inherit-

able, and because plaintiffs cannot prove that Larry inherited his condition, there can be no intent to deceive. We disagree. The evidence plaintiffs presented supports the inference that defendant knew they would not accept a child for adoption from a parent with a history of mental illness. The evidence also supports the inference that defendant made a false statement regarding the mental health of Larry's mother. We believe that this evidence is sufficient to create a question of material fact regarding whether defendant intended to deceive plaintiffs regarding the biological mother's mental health. This evidence does not conclusively establish that defendant did so because it intended to burden plaintiffs with a mentally ill child. However, defendant has provided us with no citation to authority that requires that the defendant in a fraud action intend to cause the injury complained of, and our own research has uncovered none. We do not believe that it is necessary for plaintiffs to establish that defendant intended the consequences of its fraud in order to establish an intent to deceive. Defendant knew that plaintiffs would not accept a child from a mentally ill parent and made a false statement regarding the parent's mental health. The intent to deceive can be inferred from the fact that a person knowingly makes a false statement when made for the purpose of inducing the one to whom the statement is made to act. *Szajna v. General Motors Corp.*, 115 Ill. 2d 294, 322-23 (1986). We believe that whether defendant made the false statement for the purpose of inducing plaintiffs to act is a question of fact for the jury to decide.

In conclusion, we hold that a fraudulent or negligent misrepresentation claim against an adoption agency is viable when the agency makes a false statement that affects the adoptive parents' right to make an informed decision. We find that in the case before us, plaintiffs presented sufficient evidence to create a question of material fact about whether defendant made such a false statement and whether they were injured by the false statement. Therefore, we conclude that the trial court erred when it granted defendant's motion for summary judgment. Accordingly, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this order.

■ As a final note, we observe that plaintiffs also included a count in their complaint brought on behalf of their daughter, Jane, whom they adopted through defendant after they adopted Larry. This count alleged that defendant breached its duty not to place her for adoption with a family who had adopted a "non-normal" child. We believe that this count raises issues distinct from those implicated in the remaining counts. However, plaintiffs' brief fails to distinguish

between the counts brought on their own behalf and the count brought on Jane's behalf and presents no argument regarding the validity of Jane's negligence claim. Accordingly, we find that plaintiffs have waived the issue on appeal (see *Hoff*, 331 Ill. App. 3d at 741), and we affirm the trial court's order granting summary judgment in favor of defendant on count IV of plaintiffs' complaint.

## CONCLUSION

In appeal No. 1—00—0246, we conclude that the trial court did not err when it dismissed plaintiffs' breach of contract claim. However, we conclude that plaintiffs presented sufficient evidence to create a question of material fact regarding their fraudulent and negligent misrepresentation claims. Therefore, we conclude that the trial court erred when it granted defendant summary judgment on those counts. We further conclude that plaintiffs have waived the issue of whether the trial court erred when it granted defendant summary judgment on the count brought on Jane's behalf, and we affirm the trial court's order granting summary judgment on that count. For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this order.

In appeal No. 1—00—3034, we conclude that the issue raised by plaintiffs' brief is moot and that the remaining issues have been waived on appeal by plaintiffs' failure to present arguments. This appeal is dismissed.

No. 1—00—0246, Affirmed in part and reversed in part; cause remanded.

No. 1—00—3034, Appeal dismissed.

O'BRIEN, P.J., and GALLAGHER, J., concur.