2023 IL App (1st) 200275-U

Nos. 1-20-0275, 1-20-0846 & 1-21-0288 (cons.)

Order filed January 12, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

## IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| L.D.S., L.L.C., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| FITNESS BLUEPRINT, LLC d/b/a THE FOUNDRY CHICAGO | ) | 19 M1 706123 |
| and UNION STATION CROSS FIT and Any and ALL | ) | |
| UNKNOWN OCCUPANTS, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | James A. Wright and |
| (Fitness Blueprint, LLC d/b/a The Foundry Chicago and | ) | Toya T. Harvey, |
| Union Station Cross Fit, Defendant-Appellant). | ) | Judges, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the eviction court's rulings in all respects. We find that the court did not abuse its discretion in denying Crossfit's section 2-619(a)(3) motion to dismiss or stay the eviction action and did not err by refusing to vacate or modify that decision. The court did not err by granting summary judgment in favor of L.D.S. and against Crossfit in the eviction action. And finally, the court did not abuse its discretion in refusing to modify its bond order to abate Crossfit's use and occupancy payments

during the COVID-19 pandemic.

¶ 2    Plaintiff-appellee, L.D.S., an Illinois limited liability company (L.D.S.), as landlord, filed an eviction action in the circuit court of Cook County, Municipal Division (hereafter eviction court), against its tenant, defendant-appellant, Fitness Blueprint, LLC, d/b/a The Foundry Chicago and Union Station Cross Fit (Crossfit). Following a hearing, the eviction court granted summary judgment in favor of L.D.S. and against Crossfit. The court entered an order of possession in favor of L.D.S. and awarded it damages for unpaid and additional rent.

¶ 3    On appeal, Crossfit challenges the eviction court's: (1) denial of its motion to dismiss the eviction action without prejudice or to stay the action; (2) subsequent denial of its motion to vacate or modify the decision denying the motion to dismiss or stay; (3) grant of summary judgment in favor of L.D.S. and against Crossfit; and (4) denial of its motion to modify the court's order requiring Crossfit to pay L.D.S. use and occupancy payments. For the reasons that follow, we affirm.[1]

¶ 4                                    I. BACKGROUND

¶ 5    In June 2013, L.D.S. and Crossfit executed a commercial lease for retail space located at 125 South Jefferson Street in Chicago. Crossfit planned to use the space as a fitness club. Crossfit leased the space for a term of five years, with options to renew for two additional five-year terms. To begin its operation, Crossfit made improvements to the leased premises at a cost of approximately $300,000.

¶ 6    The first five-year term of the lease required Crossfit to pay an annual base rent of $152,500, payable in equal monthly installments of $12,708.33. In addition, section 3.3(b) of the lease provided that Crossfit was responsible for paying so-called "additional rent" comprised of

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

real estate taxes, association dues, and certain property management fees.[2]

¶ 7    On December 1, 2017, Crossfit exercised its option to renew the lease for an additional five-year term at an annual base rent of $165,000, payable in equal monthly installments of $13,750. Approximately two years later, on January 2, 2019, L.D.S. sent Crossfit a demand letter for payment of additional rent in the amount of $155,644.02. This amount was said to include Crossfit's share of increased property taxes as well as a portion of the attorney fees L.D.S. incurred in defending a lawsuit involving rights to an outdoor parking area serving the property.

¶ 8    On January 21, 2019, L.D.S. sent Crossfit a revised demand letter adjusting the monthly rent. The letter stated that, beginning January 1, 2019, Crossfit's monthly rent was increased to $15,870.68, due to an increase in property taxes. L.D.S. noted that Crossfit had already paid $13,750.00 for the month of January, leaving a balance due of $2,120.68. L.D.S also stated that Crossfit owed $75,895.58 for its share of property taxes from 2013 through 2018.

¶ 9    In response to the demand letters, Crossfit sent L.D.S. a letter seeking to exercise its rights under section 3.3(d) of the lease. This section of the lease permitted a tenant to audit, inspect, and copy certain books and records of the landlord.[3] Crossfit requested L.D.S. provide it with copies of documents relating to installments of property taxes for tax years 2012, 2015, and 2016. Crossfit also claimed that its review of the lease and monthly rental payments revealed that it had overpaid

---

[2]Section 3.3(b) of the lease provides in relevant part that:

" 'Additional Rent' shall mean (i) the sum of (A) the amount of Taxes paid by Landlord during the previous year, minus the Taxes paid by Landlord during the year 2012 (but in no event less than zero (0)), plus, (B) the amount payable by Landlord for association dues and fees and management fees other than special assessments (collectively, the 'Dues'), if any, in excess of the Dues paid by Landlord in 2012 (but in no event less than zero (0))."

[3]Section 3.3(d) of the lease provides in relevant part that: "[t]enants shall have the right to audit, inspect and copy the books and records of Landlord with respect to any cost or items which is passed through to Tenants upon not less than ten (10) days advance written notice by Tenants to Landlord."

3

additional rent and was thus entitled to a refund of at least $60,143.45.

¶ 10    L.D.S. failed to provide Crossfit with the requested documents and thereafter served five-day notices on Crossfit. Crossfit subsequently tendered a payment of $11,458.33 to L.D.S.

¶ 11    On April 11, 2019, Crossfit filed a complaint for declaratory judgment against L.D.S. in the chancery division of the circuit court (2019 CH 04696). The chancery complaint alleged claims for breach of contract, conversion, and fraud. Crossfit sought an accounting and other relief.

¶ 12    A week later, L.D.S. filed an eviction action in the municipal division of the circuit court (2019 M1 706123) naming Crossfit as defendant. The eviction complaint prayed for possession of the premises along with damages for unpaid rent, court costs and attorney fees.

¶ 13    On April 26, 2019, Crossfit filed a motion in chancery court seeking to consolidate the eviction and chancery actions. Crossfit argued that resolution of the eviction action was necessarily dependent upon resolution of the chancery action. The motion to consolidate was denied.

¶ 14    On May 1, 2019, Crossfit filed a section 2-619(a)(3) (735 ILCS 5/2-619(a)(3) (West 2018)) motion in the eviction action asking the court to dismiss the matter without prejudice or stay the case pending resolution of the chancery action. Crossfit subsequently filed an amended chancery complaint on May 8, 2019. The eviction court denied Crossfit's motion to dismiss the eviction action or stay the proceedings.

¶ 15    In the chancery court, L.D.S. filed a combined motion to dismiss Crossfit's amended chancery complaint pursuant to section 2-619.1 of Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). On October 29, 2019, the chancery court granted the motion in part, dismissing the claims for an accounting, conversion, and fraud. However, the court allowed the claims for breach of contract and overpayment of additional rent to proceed.

¶ 16    On November 25, 2019, L.D.S. filed its motion for summary judgment in the eviction

4

action. The motion was supported by an affidavit from Subhash Saluja, a manager with L.D.S. L.D.S. argued that the undisputed facts showed that Crossfit owed $15,870.07 in rent for the month of April 2019, but only paid $11,458.33. L.D.S. maintained that Crossfit's failure to pay the full amount owed, after being served with 5-day notices, entitled L.D.S. to possession of the premises as well as unpaid rent from January 2019 through November 2019. Crossfit filed its own motion in the eviction action asking the court to vacate or modify its order of May 21, 2019, which denied Crossfit's section 2-619(a)(3) motion.

¶ 17    The eviction court heard oral argument on L.D.S.'s motion for summary judgment on January 28, 2020. Following argument, the court entered an order of possession in favor of L.D.S. and against Crossfit. The court awarded L.D.S. $44,117.40 in unpaid and additional rent. The court also denied Crossfit's motion to vacate or modify the May 21, 2019 order denying Crossfit's section 2-619(a)(3) motion. The court made a written finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason to delay enforcement or appeal of its eviction order with respect to the issues of possession and unpaid rent.

¶ 18    On February 11, 2020, Crossfit filed its notice of appeal from the eviction court's order of January 28, 2020. On March 10, 2020, the eviction court granted Crossfit's emergency motion to stay enforcement of the eviction order, subject to certain terms and conditions. Crossfit was ordered to secure a bond in the amount of $65,000 and was required to pay $13,750 per month for use and occupancy of the premises, along with a past due amount of $2,191.67.

¶ 19    On May 19, 2020, L.D.S. filed a motion asking the eviction court to vacate the stay order. L.D.S. argued that Crossfit failed to make certain use and occupancy payments and failed to comply with the court's bond requirements.

¶ 20    Crossfit filed a motion on July 24, 2020, requesting the eviction court modify its order of

March 10, 2020. Crossfit argued that the COVID-19 pandemic and resulting executive order by Illinois Governor Pritzker shutting down "nonessential" businesses such as fitness clubs, constituted a "casualty" within the meaning of section 6.2 of the lease.[4] Crossfit claimed that, as a result, the premises was rendered unusable such that Crossfit was entitled to an abatement of its rent payment obligations under sections 6.3 and 7.4 of the lease.[5] Crossfit requested that the court, among other things, abate the use and occupancy payments retroactive to March 2020, and "set a reasonable time within which to secure and present bond in this matter."

¶ 21　The eviction court heard both motions on July 28, 2020, and afterwards entered an order granting L.D.S.'s motion to vacate the eviction stay and extending the time for L.D.S. to enforce the eviction order. The court denied Crossfit's motion to modify the court's order of March 10, 2020 and entered an additional money judgment in favor of L.D.S. in the amount of $48,125.01. The court made a written finding pursuant to Rule 304(a) that there was no just reason to delay enforcement or appeal of its order. Crossfit filed its notice of appeal from the order on August 4, 2020.

¶ 22　On September 2, 2020, the eviction court denied Crossfit's motion to stay enforcement of

---

[4]Section 6.2 of the lease provides in relevant part that:

"In the event the Leased Premises are damaged by fire or other casualty, Landlord may elect either to repair the Leased Premises or to terminate this Lease by giving Tenants no less than (30) days written notice of such termination within sixty (60) days after the date of such fire or other casualty."

[5]Section 6.3 of the lease provides:

"If such damage renders the Leased Premises totally untenantable, the rent shall abate until the Leased Premises are again made tenantable and if such damage renders the Leased Premises partially untenantable, Rent shall be abated in proportion to the floor area of the Leased Premises rendered untenantable until the entire Leased Premises are again made tenantable."

Section 7.4 of the lease provides that: "[i]n the event of any such partial taking, the Rent payable by Tenants hereunder shall be reduced from and after the date Tenants are deprived of possession in proportion to the floor area of the Leased Premises so taken."

its order of July 28, 2020. The court also granted in part and denied in part, L.D.S.'s petition for attorney fees. This court subsequently denied Crossfit's emergency motion to stay the eviction pending disposition of its previously filed emergency motion to stay.[6]

¶ 23    On March 16, 2021, Crossfit filed a notice of appeal from "all prior interlocutory orders, rulings and decisions" of the eviction court. This notice of appeal was consolidated with Crossfit's two prior notices of appeal.

¶ 24                                    II. ANALYSIS

¶ 25    Crossfit contends that the eviction court erred in denying its section 2-619(a)(3) motion to dismiss the eviction action without prejudice or to stay the action pending resolution of the declaratory judgment action by the chancery court. Crossfit further argues that the court compounded this error when it refused to vacate or modify its order denying the section 2-619(a)(3) motion.

¶ 26    L.D.S. responds that this court should dismiss Crossfit's challenge to the dismissal of its section 2-619(a)(3) motion. L.D.S. argues that Crossfit failed to provide a transcript or report of proceedings in which the eviction court's order dismissed the motion. L.D.S. contends that without a transcript or report of proceedings, this court is unable to review the eviction court's decision. We disagree.

¶ 27    The record reflects that no evidence was received by the eviction court during the hearing on the motion. Rather, a review of the eviction court's order shows that the court dismissed Crossfit's section 2-619(a)(3) motion "for the reasons stated," after the court had reviewed the parties' briefs and heard oral arguments from counsel. Arguments of counsel are not evidence. *Johnson v. Lynch*, 66 Ill. 2d 242, 246 (1977). The record on appeal contains the parties' pleadings

---

[6]Crossfit vacated the premises and surrendered possession to L.D.S. on or about January 4, 2021. Crossfit contends that the issue of possession is therefore moot on appeal.

and briefs filed in support of and opposition to the motion; the same pleadings and briefs the eviction court relied upon in making its rulings. Therefore, "we find that the record is sufficiently complete to allow us to review the issue before us." *Lukanty v. Moglinicki*, 2022 IL App (1st) 210794, ¶ 25; *Walker v. Iowa Marine Repair Corp.*, 132 Ill. App. 3d 621, 625-26 (1985) (finding that under the particular facts of the case, the absence of a transcript from a hearing on a motion to transfer for *forum non conveniens* did not preclude review of the circuit court's ruling on the motion).

¶ 28        A. Motion to Dismiss or Stay Pursuant to Section 2-619(a)(3)

¶ 29    Turning to the merits, we note that section 2-619(a)(3) of the Code is a procedural device "designed to avoid duplicative litigation." *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 447 (1986). This section "provides that a defendant may seek a dismissal or a stay on the ground that there is another action pending between the same parties for the same cause." *Village of Mapleton v. Cathy's Tap, Inc.*, 313 Ill. App. 3d 264, 266 (2000) (citing section 2-619(a)(3) (West 1998)). "In evaluating whether two actions are for the same cause, a crucial inquiry is 'whether the two actions arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof or relief sought materially differ between the two actions.' " *Kapoor v. Fujisawa Pharmaceutical Co., Ltd.*, 298 Ill. App. 3d 780, 786 (1998) (quoting *Terracom Development Group v. Village of Westhaven*, 209 Ill. App. 3d 758, 762 (1991)). "Two actions are for the same cause when the relief requested is based on substantially the same set of facts." *Village of Mapleton*, 313 Ill. App. 3d at 266. The movant has the burden of proof "to demonstrate through clear and convincing evidence that the two actions involve both the same parties and the same cause." *Hapag-Lloyd (America), Inc. v. Home Insurance Co.*, 312 Ill. App. 3d 1087, 1091 (2000); *Northbrook Property & Casualty Insurance Co. v. Geo International Corp.*, 317 Ill. App. 3d 78,

80 (2000).

¶ 30    However, our supreme court has determined that "even when the 'same cause' and 'same parties' requirements are met, section 2-619(a)(3) does not mandate automatic dismissal." *Kellerman*, 112 Ill. 2d at 447; *Zurich Insurance Co. v. Baxter International, Inc.*, 173 Ill. 2d 235, 243-44 (1996). Instead, the court retains the discretion to grant or deny a section 2-619(a)(3) motion. *Kellerman*, 112 Ill. 2d at 447.

¶ 31    Crossfit contends that the chancery and eviction actions arise from the same transaction (the lease), involve the same parties and same issues (additional rent), and depend upon the same evidence, and therefore the eviction court abused its discretion in denying the section 2-619(a)(3) motion. L.D.S. counters that Crossfit was statutorily barred under section 9-106 of the Forcible Entry and Detainer Act (Eviction Act) (735 ILCS 5/9-106 (West 2014)), from having its claims heard in the eviction action because the claims were not germane to the eviction proceedings.

¶ 32    L.D.S.'s arguments require us to engage in statutory interpretation of section 9-106 of the Eviction Act. "Issues of statutory interpretation are questions of law which we review *de novo*." *Krautsack v. Anderson*, 223 Ill. 2d 541, 553 (2006). "A court's primary objective in interpreting a statute is to ascertain and give effect to the legislature's intent." *Young v. Wieland*, 2020 IL App (2d) 191042, ¶ 26. "The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning." *Oswald v. Hamer*, 2018 IL 122203, ¶ 10.

¶ 33    Section 9-106 of the Eviction Act provides in part that "no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." 735 ILCS 5/9-106 (West 2014); see *Yale Tavern, Inc. v. Cosmopolitan National Bank*, 259 Ill. App. 3d 965, 971 (1994) ("Matters not germane to the issue of possession may not be litigated in a forcible entry and detainer action;"). The purpose of the Eviction Act "is to provide a speedy

remedy to allow a person who is entitled to the possession of certain real property to be restored to possession." *Wells Fargo Bank, N.A. v. Watson*, 2012 IL App (3d) 110930, ¶ 14.

¶ 34    The only factual questions that need to be answered in an eviction action are " 'which party is entitled to immediate possession and whether a defense which is germane to the distinctive purpose of the action defeats plaintiff's asserted right to possession. ' " *Milton v. Therra*, 2018 IL App (1st) 171392, ¶ 23 (quoting *First Illinois Bank & Trust v. Galuska*, 255 Ill. App. 3d 86, 90 (1993)). In relation to the Eviction Act, our supreme court has defined "germane" to mean closely allied, related, or connected. *Rosewood Corp. v. Fisher*, 46 Ill. 2d 249, 256-58 (1970). "Claims which are germane to the issue of possession generally fall into one of four categories: (1) claims asserting a paramount right of possession; (2) claims denying the breach of the agreement vesting possession in the plaintiff; (3) claims challenging the validity or enforceability of the agreement on which the plaintiff bases the right to possession; and (4) claims questioning the plaintiff's motivation for bringing the action." *Avenaim v. Lubecke*, 347 Ill. App. 3d 855, 862 (2004).

¶ 35    In this case, Crossfit's chancery complaint for declaratory judgment alleged claims for breach of contract, conversion, and fraud. Crossfit sought an accounting and monetary damages. Crossfit did not seek possession of the premises. "Illinois courts have consistently held that a claim that seeks damages and not possession is not germane to the purpose of a forcible entry and detainer proceeding." *Milton v. Therra*, 2018 IL App (1st) 171392, ¶ 24; see also *People ex. rel. Department of Transportation v. Walliser*, 258 Ill. App. 3d 782, 788 (1994) ("Claims seeking monetary damages and not possession are not germane to the distinct purposes of a forcible entry and detainer proceeding.")

¶ 36    Crossfit contends that its claims for money damages are premised on its right to possession of the premises. Specifically, Crossfit asserts that the issue as to whether it owed additional rent

10

under the lease was germane to the issue of possession. The issue as to whether Crossfit owed additional rent under the lease has no relevance to the issue of possession of the premises other than by serving as a factual predicate for Crossfit's assertion that L.D.S. breached the lease by, among other things, failing to permit it to audit, inspect, and copy certain books and records. See, e.g., *4600 W. Chicago, LLC v. Gomez Transmissions, Inc.*, 2017 IL App (1st) 160146-U, ¶ 35 (claim of property damage was not relevant to issue of possession other than by serving as a factual predicate for the conclusion that the lease was breached).[7]

¶ 37    The cases Crossfit cites, *LaSalle National Bank v. Helry Corp.*, 136 Ill. App. 3d 897 (1985) and *Peoria Housing Authority v. Sanders*, 54 Ill. 2d 478 (1973), fail to support its position. In *LaSalle National Bank*, the court determined that "both parties were litigating the right to possession of the premises." *LaSalle National Bank*, 136 Ill. App. 3d at 906. In *Peoria Housing Authority*, the tenant denied that the housing authority was entitled to possession of the premises. *Peoria Housing Authority*, 54 Ill. 2d at 479. Here, unlike the two-above cited cases, Crossfit did not seek possession of the premises or argue that L.D.S. was not entitled to possession.

¶ 38    Accordingly, we find that the eviction court did not err in denying Crossfit's section 2-619(a)(3) motion to dismiss or stay the eviction action. In addition, we conclude that the court did not err by refusing to vacate or modify that decision.

¶ 39                                B. Summary Judgment

¶ 40    Crossfit next challenges the eviction court's grant of summary judgment in favor of L.D.S. "The purpose of summary judgment is to determine whether a genuine issue of material fact exists

---

[7]We note that the cited case was an unpublished order pursuant to Illinois Supreme Court Rule 23(b) (eff. July 1, 2011). However, we are not citing the case for persuasive or precedential purposes. See, e.g., *People v. Taylor*, 2022 IL App (5th) 180192, ¶ 38, n. 3. Rather we cite it to demonstrate what courts have considered relevant and germane to the issue of possession raised in an action to recover possession of real property.

that would require a trial." *Hodges v. St. Clair County*, 263 Ill. App. 3d 490, 492 (1994). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILC 5/2-1005(c) (West 2012). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993).

¶ 41    "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "Although the plaintiff need not prove his case at the summary judgment stage, he must present sufficient evidence to create a genuine issue of material fact." *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 470 (2010). Our review of a summary judgment order is *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 42    Crossfit advances several arguments in support of its contention that the eviction court erred in granting summary judgment in favor of L.D.S. We address each in turn.

¶ 43                                    1. Eviction Damages

¶ 44    Crossfit first argues that the eviction court erred in granting summary judgment in favor of L.D.S. because L.D.S. sought more eviction damages in its motion for summary judgment than it sought in its eviction complaint. Even if true, such a discrepancy does not raise an issue of material fact precluding an award of summary judgment in L.D.S.'s favor. A review of the record demonstrates that the eviction court awarded L.D.S. damages in the amount it was entitled to recover for unpaid rent.

¶ 45    L.D.S.'s eviction complaint requested money damages in the amount of $15,870.07, plus all rents accruing through the date of trial, costs, attorney fees, and common area maintenance. In L.D.S.'s reply to Crossfit's response to the motion for summary judgment, L.D.S. asserted that it was pursuing three categories of unpaid rent in its summary judgment motion: (1) the difference between the $11,458.33 that Crossfit paid in April 2019, and the monthly base rent of $13,750 ($2,291.67), multiplied monthly from April 2019 through the date of trial in January 2020 (10 months), or $22,916.70; (2) 2018 taxes payable in 2019, which amounted to $21,200.70; and (3) "everything in the ledger besides attorney's fees and court costs above and beyond the monthly rent of $15,870.07 [including] property taxes for 2015-2018, a locksmith charge, and late fees." L.D.S. stated that for purposes of its motion for summary judgment, it was withdrawing its request for the third category of damages.

¶ 46    On January 28, 2020, following oral argument, the eviction court entered an order of possession and awarded L.D.S. $44,117.40 in unpaid rent, or the sum of the first and second categories of unpaid rent mentioned above. In other words, the court awarded L.D.S. damages in the amount it was entitled to recover for unpaid rent.

¶ 47                              2. Monthly Rent Under the Lease

¶ 48    Crossfit next contends that L.D.S.'s claim for monthly rent of $15,870.07 was not supported by the lease where the lease provided that monthly rent was $13,750. We disagree.

¶ 49    Section 3.2 of the lease provided for base monthly rent and section 3.3 provided for so-called additional rent. In December 2017, Crossfit exercised its option to renew the lease for a second five-year term, at an annual base rent of $165,000, payable in equal monthly installments of $13,750. In January 2019, L.D.S. sent Crossfit a revised demand letter notifying Crossfit that beginning January 1, 2019, monthly rent was increased to $15,870.68, due to an increase in

13

property taxes. L.D.S. noted that Crossfit had already paid $13,750.00 for the month of January, leaving a balance due of $2,120.68. The undisputed facts show that Crossfit owed L.D.S. $15,870.07 in rent in April 2019, was served with a 5-day notice demanding the same, and paid $11,458.33, leaving a balanced owed of $4,411.74. L.D.S.'s claim for monthly rent of $15,870.07 was supported by the lease

¶ 50                    3. Evidentiary Bases to Support Motion for Summary Judgment

¶ 51    Crossfit next contends there was no evidentiary basis to support L.D.S.'s motion for summary judgment. Crossfit raises two arguments in support of this contention. For the reasons which follow, we find these arguments are unpersuasive.

¶ 52                    a. Affidavit in Support of Motion for Summary Judgment

¶ 53    Crossfit contends that the affidavit of Subhash Saluja, which L.D.S. attached to its motion for summary judgment, failed to comply with the requirements of Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013), and, therefore, the eviction court erred in failing to strike the affidavit. Crossfit argues that Saluja's affidavit "merely restated information contained in inadmissible hearsay documents." Crossfit claims that Saluja only stated that he was "familiar with the leases, accounts, notices, ledgers, property, tax bills, and other records created and/or kept by [L.D.S.] in the ordinary course of [L.D.S.'s] business." Further, that Saluja "made no effort to satisfy the business records exception to identify when the documents that are the subject of this dispute were created, [and] by whom."

¶ 54    "[A] court's determination of whether an affidavit offered in connection with a motion for summary judgment complies with Rule 191 is a question of law subject to *de novo* review." *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119, 128 (2003). Rule 191(a) provides in relevant part that:

14

"Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; *** shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 55    "In addition, to admit business records into evidence as an exception to the general rule excluding hearsay, the proponent must lay a proper foundation by showing that the records were 'made (1) in the regular course of business, and (2) at or near the time of the event or occurrence.' " *US Bank, National Association v. Avdic*, 2014 IL App (1st) 121759, ¶ 23 (quoting *Gulino v. Economy Fire & Casualty Co.*, 2012 IL App (1st) 102429, ¶ 27).

¶ 56    Here, we find that Saluja's affidavit complied with Rule 191(a). Saluja averred that he was a manager of L.D.S. and was familiar with the lease, accounts, notices, ledgers, property, tax bills, and other records created and or kept by L.D.S. in the ordinary course of L.D.S.'s business. Saluja stated that he signed the lease at issue on behalf of L.D.S. Saluja averred that the copies of the documents attached to his affidavit were true and correct copies of the documents. A review of Saluja's affidavit shows that his statements regarding the amounts of unpaid rent and L.D.S.'s efforts to collect these amounts, were based on Saluja's personal knowledge and experience in his position as a manager of L.D.S. Therefore, we find that Saluja's affidavit complied with Rule 191(a) and was properly considered by the eviction court in ruling on L.D.S.'s motion for summary judgment.

¶ 57                b. Disputed Questions of Fact Precluding Summary Judgment

15

¶ 58 Crossfit argues that there were disputed questions of material fact precluding summary judgment. Crossfit first contends that "there was no basis for past due taxes pursuant to the Lease." This contention does not raise an issue of material fact precluding summary judgment since L.D.S. stated that, for purposes of its motion for summary judgment, it was withdrawing its request for past due taxes.

¶ 59 Crossfit contends there were disputed questions of fact as to monies overcharged by LDS. This assertion too does not create an issue of material fact. Crossfit's allegations regarding overcharged monies were not germane to the eviction action; the eviction court only addressed L.D.S.'s rights to possession of the premises and unpaid rent. Crossfit next argues there were disputed questions of fact regarding how to construe the base rent, additional rent, and monthly rent, as these terms appear in the lease. Crossfit, however, fails to explain how the court's interpretation of these lease terms would create an issue of fact as to whether L.D.S. was entitled to possession of the premise and unpaid rent. In sum, we find that the eviction court did not err in granting summary judgment in favor of L.D.S. and against Crossfit in the eviction action.

¶ 60 C. Modification of Bond Order

¶ 61 Crossfit next argues that the eviction court erred when it failed to modify its bond order of March 10, 2020. The bond order granted Crossfit's emergency motion to stay enforcement of the eviction order, conditioned on Crossfit posting a bond of $65,000 and paying $13,750 per month for use and occupancy.

¶ 62 Crossfit's arguments require interpretation of the lease, which is a matter of law subject to *de novo* review. *Urban Sites of Chicago v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 23. However, a trial court's decision on whether to modify a previous order is a matter within the sound discretion of the court. *Langone v. Schad, Diamond & Shedden, P.C.*, 406 Ill. App. 3d 820,

16

830 (2010). "With these standards of review in mind, we now turn to the issues." *1350 Lake Shore Associates v. Randall*, 401 Ill. App. 3d 96, 102 (2010).

¶ 63                                    1. Casualty Under the Lease

¶ 64    Crossfit contends that the COVID-19 pandemic and resulting executive orders by Governor Pritzker shutting down "nonessential" businesses such as fitness clubs, constituted a "casualty" within the meaning of section 6.2 of lease that rendered the premises unusable. As a result, Crossfit argues that during the pandemic, it was entitled to an abatement of court ordered use and occupancy payments.

¶ 65    Section 6.2 of the lease, entitled "Restoration," governs situations where the leased premises is damaged "by fire or other casualty." Under this section of the lease, the landlord can elect to either repair the premises or terminate the lease. The tenant also has the option to terminate the lease. This court has recently determined that the term "casualty" as used in a commercial lease refers to physical damage to the leased premises and therefore the COVID-19 pandemic does not constitute a "casualty" under the lease. See *55 Jackson Acquisition, LLC v. Roti Restaurants, LLC*, 2022 IL App (1st) 210138, ¶¶ 51-52. We agree with this interpretation of the term "casualty."

¶ 66    Section 6.2 of the lease permits the landlord to repair damage to the premises caused by fire or other casualty. A common-sense reading of the term "casualty," as used in the lease, makes plain that the term "refers to singular incidents, like fire, which have a physical impact in or to the premises." See *Gap, Inc. v. Ponte Gadea New York LLC*, 524 F. Supp. 3d 224, 232 (S.D.N.Y. 2021).

¶ 67                                    2. Eminent Domain Under the Lease

¶ 68    Crossfit next contends that the COVID-19 pandemic and its effects implicated Article 7 of the lease entitled "Eminent Domain." "Eminent domain is a state's sovereign power to take private

property for public use, subject to the constitutional requirement that just compensation be paid." *Sorrells v. City of Macomb*, 2015 IL App (3d) 140763, ¶ 24. On this issue, we agree with and adopt the Michigan appeals court's reasoning in *Gym 24/7 Fitness, LLC v. State*, No. 355148, slip op. at 15-19, ____ *N.W.2d* ____, 2022 WL 982050 (Mich. Ct. App. March 31, 2022), which held that the Governor's executive orders temporarily closing and imposing restrictions on a gym owner's business during the COVID-19 pandemic, did not involve a physical taking of property. Rather, "the Governor's executive orders [were] valid uses of police power and not a taking under the exercise of eminent domain power." *1600 Walnut Corp. v. Cole Haan Company Store*, 530 F. Supp. 3d 555, 559 (E.D. Pa. 2021).

¶ 69                                3. Commercial Frustration

¶ 70    Crossfit finally argues that pursuant to the doctrine of commercial frustration, it was entitled to an abatement of use and occupancy payments during the COVID-19 pandemic. "The doctrine of commercial frustration will render a contract unenforceable if a party's performance under the contract is rendered meaningless due to an unforeseen change in circumstances." *Illinois-American Water Company v. City of Peoria*, 332 Ill. App. 3d 1098, 1106 (2002). To apply the doctrine, "there must be a frustrating event not reasonably foreseeable and the value of the parties' performance must be totally destroyed by the frustrating cause." *Id*. Courts have determined that the doctrine of commercial frustration is an affirmative defense to the enforcement of contract and should be "given a narrow construction so as to preserve the certainty of contracts." *AGW Sono Partners, LLC v. Downtown Soho, LLC*, 343 Conn. 309, 334-35, 273 A. 3d 186 (2022); *55 Jackson Acquisition, LLC,* 2022 IL App (1st) 210138, ¶ 56.

¶ 71    Here, the Governor's executive orders which temporarily required Crossfit to shut down its fitness club for four months, out of a five-year lease, did not frustrate the overall purpose of the

lease. See, *e.g.*, *9795 Perry Highway Management, LLC v. Bernard*, 273 A. 3d 1098, 1106 (Pa. Super. 2022) (citing *New York Auto. Dealers Ass'n, Inc. v. City Spec, LLC*, 70 Misc. 3d 1209(A), at *9, 2020 WL 8173082 (N.Y. Civ. Ct. 2020) ("[E]ven if Respondent were forced by the Executive Order to close in-person operations at the Premises, a four-month closure out of a five-year lease did not frustrate the overall purpose of the Lease")).

¶ 72    Crossfit sought the emergency stay to preserve the status quo during the pendency of its appeals, which the eviction court granted. The stay was conditioned on Crossfit posting a bond, and payment of use and occupancy to compensate L.D.S. for its inability to relet the premises while Crossfit remained in possession. Under these circumstances, we find no abuse of discretion in the eviction court's refusal to modify its bond order of March 10, 2020.

¶ 73                                    III. CONCLUSION

¶ 74    For the foregoing reasons, the judgments of the eviction court are affirmed in all respects.

¶ 75    Affirmed.